Larry KELLER, Appellant,

v.

STATE of Iowa, Appellee.

No. 90–901.

Supreme Court of Iowa.

Sept. 18, 1991.

As Amended Sept. 19, 1991.

James P. Hoffman, Keokuk, for appellant.

Thomas J. Miller, Atty. Gen., and Robert D. Wilson, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Plaintiff, Larry Keller, appeals from a summary judgment ruling dismissing his tort action against the State. He contends that summary judgment was inappropriately granted because fact issues exist concerning whether the State or its employees acted negligently during an OSHA visitation and consultation. Upon considering the arguments presented, we affirm the judgment of the district court.

Plaintiff was employed as a janitor for the Morse Rubber Company in Keokuk. As part of this employment, he occasionally did some spray painting. On August 21, 1985, his employer instructed him to spray a primer coat on the metal fabrication to be used in one of Morse Rubber Company's products. This was in preparation for eventually coating the structure with an epoxy resin. This job was to be performed in a spraying booth enclosed on three sides. The product to be applied was known as Koppers 654 Epoxy Primer, a lead silico chromate substance. It contained a high concentration of lead.

On the day the primer was applied by plaintiff, representatives of the Labor Services Section of the Iowa Bureau of Labor (now the Department of Employment Services) were on the premises of the Morse Rubber Company. They were there to counsel plaintiff's employer with respect to that company's obligations under the Iowa Occupational Safety and Health Act (Iowa Code chapter 88 (1989)).[1] Prior to plaintiff's undertaking his assigned spraying task, at least two of the bureau's employees examined the lead silico chromate primer material and the manufacturer's technical data sheet for that product. They also examined the spray booth and the mask plaintiff intended to wear. These examinations took place prior to the spraying activity. There is no indication that any bureau of labor employee was present when the spraying took place.

The two bureau of labor employees who examined the primer material state in depositions that safe application of this lead-base substance in the three-sided spray booth mandated the use of a respirator mask with special canisters to trap toxic vapors. Although it appears that respirator masks were available at the work site at this time, plaintiff wore a simple dust mask while spraying the primer. That type of mask does not protect against inhalation of toxic vapors. In the process of applying the primer spray, plaintiff inhaled toxic fumes that produced a serious and permanent injury.

The motion papers in the summary judgment proceeding include deposition testimony of other employees of Morse Rubber Company allegedly present prior to and at the time of plaintiff's injury. Their testimony suggests that bureau of labor employees gave affirmative approval to plaintiff's use of the dust mask. The State employees in question deny that this occurred.

Plaintiff contends that this contradiction in the evidence was sufficient to preclude summary judgment. In addition, he urges that, even if the agents of the State did not affirmatively advise him that the mask was adequate, these persons were negligent in not warning him concerning the mask's inadequacy to protect against inhalation of toxic vapors.

In considering the State's summary judgment motion, the district court distilled

---

**1.** The bureau of labor's responsibilities in administering the Iowa Occupational Safety and Health Act include both enforcement functions and educational and training functions. Educational and training functions are mandated by Iowa Code section 88.16(3) (1989). The Division of Labor Services Bureau of Consultation and Education provides on-site consultative services to employers. Under agency regulations, the discovery of hazards during such on-site consultative visits does not require the issuance of citations. 347 Iowa Admin.Code 8.1. The employees of the bureau of labor who were at the Morse Rubber Company in August 1985 were there to provide on-site consultative services.

plaintiff's broad and overlapping specifications of negligence into five basic claims of negligence. These are: (1) failure of the State to adequately train, equip, and supervise the bureau of labor employees; (2) failure of bureau of labor employees to warn plaintiff of the dangers of toxic vapors emanating from the substance being sprayed; (3) failure of bureau of labor employees to instruct plaintiff concerning the appropriate protective mask; (4) failure of the bureau of labor employees to supervise plaintiff in his performance of the spraying; and (5) affirmatively misadvising plaintiff on the protective qualities of the dust mask worn by him. Based on the allegations of the petition and plaintiff's answers to the State's interrogatories, we agree that this characterization of plaintiff's claims was correct.

After condensing the claims to the foregoing five specifications of negligence, the district court concluded that (a) a prerequisite of negligence liability is a duty owed by the actor which requires conformity to a standard of conduct for the protection of the victim; (b) the State or its employees owed plaintiff no duty to conform their conduct for his protection as to the first four specifications of negligence; and (c) with respect to any duty owed plaintiff under specification (5), the State and its employees were immunized from liability by the misrepresentation exception to tort liability contained in Iowa Code section 25A.14(4). The district court also expressed the view that some or all of plaintiff's claims of negligence fell within the discretionary function exception contained in Iowa Code section 25A.14(1).

In arguing for reversal, plaintiff urges that neither the misrepresentation exception nor the discretionary function exception is applicable to the facts of the present case. In addition, he contends that the bureau of labor employees owed him a duty of reasonable care under the agency's own regulations and by reason of their voluntary acceptance of responsibility in advising him about the mask.

The State argues that activities relating to the bureau of labor's educational and training function under Iowa Code section 88.16(3) are, by their very nature, discretionary functions for which immunity is provided under section 25A.14(1). It also contends that, if any improper assurances were given concerning the safety of plaintiff's mask, this conduct would fall within the misrepresentation exception to tort liability contained in Iowa Code section 25A.14(4) (1989). Finally, the State urges that the district court was correct in its conclusions limiting the extent of the State's duty to plaintiff.

The State contends that its position is buttressed by the applicable statutes and regulations. In designating the agency's educational function, section 88.16(3) provides:

> The commissioner shall provide for the establishment and supervision of programs for the education and training of employers and employees in the recognition, avoidance, and prevention of unsafe or unhealthful working conditions in employments covered by this chapter, and consult with and advise employers, employees, and organizations representing employers and employees, as to effective means of preventing occupational injuries and illnesses.

*Id.* The bureau of labor has promulgated regulations governing the activities of those employees who perform on-site consultative services to employers. These include the following:

> [T]he consultation and education bureau is responsible for developing and directing an on-site consultative service program for employers in the private sector (nongovernmental employers). *The section conducts consultations at workplaces to assist employers in the recognition and correction of workplace hazards and potential violations of the Iowa Occupational Safety and Health Act and the Hazardous Chemicals Risks Right to Know Act, division II.*

347 Iowa Admin.Code 2.4 (emphasis added). The chapter contains procedures under which the division of labor services, bureau of consultation and education provides on-site consultative services to em-

ployers. The service is available at no cost to employers to assist them in establishing effective occupational safety and health programs for providing their employees employment and a place of employment which is safe and healthful. The overall goal is to prevent the occurrence of injuries and illnesses which may result from exposure to hazardous working conditions and from hazardous work practices. The principal assistance will be provided at the employer's worksite, but off-site assistance may also be provided by telephone and correspondence, and at locations other than the employer's worksite, such as the offices of the division of labor services. *At the worksite, the consultant will, within the scope of the employer's request, evaluate the employer's program for providing employment and a place of employment which is safe and healthful, as well as identify specific hazards in the workplace, and will provide appropriate advice and assistance in establishing or improving the employer's safety and health program and in correcting hazardous conditions identified.*

*... [T]he discovery of hazards shall not mandate citations or penalties,* the employer remains under the statutory obligation to protect employees, and, in certain instances, the employer shall be required to take necessary protective action. Employer correction of hazards identified by the consultant during a comprehensive workplace survey, and implementation of certain core elements of an effective safety and health program and commitment to the completion of others may serve as the basis for employer exemption from certain enforcement activities....

347 Iowa Admin.Code 8.1 (emphasis added). An initial on-site consultative visit shall consist of an opening conference where the employer shall be advised as to the responsibilities under state law, an examination of those aspects of the employer's safety and health program which relate to the scope of the visit, a walk through the workplace and a closing conference where the employer shall be informed of

hazards and the recommended corrective measures. An initial visit may include training and education for employers and employees, if the employers request the assistance and if the need for the training and education is revealed by the walk through the workplace and the examination of the employer's safety and health program.

347 Iowa Admin.Code 8.4(1).

*The consultant retains the right to confer with individual employees during the course of the visit in order to identify and judge the nature and extent of particular hazards within the scope of the employer's request, and to evaluate the employer's safety and health program.* The consultant shall explain the necessity for this contact to the employer during the opening conference, and *the employer must agree to this contact before a visit can proceed.* In addition, employees, their representatives, and members of a workplace joint safety and health committee, may participate in the on-site consultative visit, to the extent desired by the employer. In the opening conference, the consultant shall encourage the employer to allow employee participation to the fullest extent practicable.

347 Iowa Admin.Code 8.4(2) (emphasis added).

Activity during the on-site consultative visit will be focused primarily on those conditions, hazards or situations regarding which the employer has requested assistance. *Within the scope of the employer's request, the consultant shall review the employer's safety and health program and provide advice on modifications or additions to make the program more effective.*

. . . .

*At the time the consultant determines that an identified serious hazard exists, the consultant shall assist the employer to develop a specific plan to correct the hazard, affording the employer a reasonable period of time to complete the necessary action.*

347 Iowa Admin.Code 8.4(3) (emphasis added).

An employer must take immediate action to eliminate employee exposure to *a hazard which, in the judgment of the consultant, presents an imminent danger to employees.* If the employer fails to take the necessary action, the chief of the bureau of consultation and education shall immediately notify the affected employees and the chief of the bureau of occupational safety and health and provide relevant information.

An employer must also take the necessary action to eliminate or control employee exposure to any identified serious hazard. In order to demonstrate that the necessary action is being taken, an employer may be required to submit periodic reports, permit a follow-up visit, or take similar action.

347 Iowa Admin.Code 8.4(4) (emphasis added).

## I. *Whether the State or its Employees Violated a Legal Right of Plaintiff.*

■ Our review of a successful motion for summary judgment is for correction of errors of law. Iowa R.App.P. 4. To sustain a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Alden v. Genie Indus.*, 475 N.W.2d 1, 2 (Iowa 1991); *City of Eldridge v. Caterpillar Tractor Co.*, 270 N.W.2d 637, 640–41 (Iowa 1978); Iowa R.Civ.P. 237(c). Consequently, we must consider the elements of recovery which the plaintiff must show in light of the undisputed facts revealed by the motion papers.

We first consider the district court's ruling concerning the nature and extent of the State's duty to plaintiff. This exercise begins with our recent admonishment that

[a] fundamental principle of tort law is that violation of a legal right by a wrongdoer is a prerequisite to obtain redress for a claimed wrong. Thus, it is necessary to show a duty owed the injured party by the wrongdoer, and a violation of that duty. This duty, or standard of conduct of a reasonable person, may be established by legislative enactment or by judicial decision. Not every claim of negligence creates a civil cause of action. The issue of whether a particular duty arises out of parties' relationship is always a matter of law for the court to decide.

*Engstrom v. State*, 461 N.W.2d 309, 315 (Iowa 1990) (citations omitted).

■ The reference in *Engstrom* to linking the existence of legal duty to a particular relationship between the parties is not an unwavering requirement for all negligence torts. Such linkage is not required, for instance, when the direct consequences of a negligent act causes harm to another. It is required, however, for most claims based on an alleged failure of an actor to aid or protect another person or to control the conduct of a third party. *See Sankey v. Richenberger*, 456 N.W.2d 206, 209–10 (Iowa 1990). The origin of this distinction is explained as follows in a comment to the Restatement (Second) of Torts. This comment states:

The origin of the rule lay in the early common law distinction between action and inaction, or "misfeasance" and "nonfeasance." In the early law one who injured another by a positive affirmative act was held liable without any great regard even for [the relationship between the parties]. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer serious harm because of his omission to act. Hence liability for non-feasance was slow to receive any recognition in the law. It appeared first in, *and is still largely confined to,* situations in which there was some special relation between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection of the plaintiff.

Restatement (Second) of Torts § 314 comment *c* (1965) (emphasis added). A nonex-

clusive list of special relationships that give rise to a duty to protect another is contained in sections 314A and 314B of the Restatement.

The plaintiff urges that the requirement for a special relationship is supplied in the present case through the provisions of the Iowa Occupational Safety and Health Act, Iowa Code chapter 88. He argues that this legislation confers duties and responsibilities upon bureau of labor employees for the benefit of all employees whose employers are subject to the act. This special relationship, plaintiff argues, is analogous to the special relationships that were found to confer a duty in *Adam v. State*, 380 N.W.2d 716 (Iowa 1986), and *Wilson v. Nepstad*, 282 N.W.2d 664 (Iowa 1979).

We believe a proper analysis of *Wilson* and *Adam* necessarily requires consideration of the chain of causation on which the claimants in those cases relied. In *Wilson*, the plaintiffs relied on the alleged negligence of public employees in performing a fire safety inspection within the scope of their statutory duties. *Adam* involved claims of an inadequate audit of grain storage facilities by public authorities. The theory of causal liability recognized in those cases was based on the premise that, if the governmental inspection or audit duty had been properly performed, other forces would have come into play to prevent the harm the uncorrected conditions ultimately caused to the claimants. These other forces were not specifically identified. On remand to the district court in *Wilson* and in an earlier appeal in *Adam v. Mount Pleasant Bank & Trust Co.*, 340 N.W.2d 251 (Iowa 1983), it was left to the claimants to establish the causal elements by a preponderance of the evidence.

The alleged damage to the claimants in *Wilson* and *Adam* occurred well after the allegedly negligent inspection and audit had been completed. Ameliorative forces triggered by a proper inspection or audit report conceivably would have had time to take place. Unlike the present case, there was no suggestion in those cases that the public employees conducting the inspection or audit were required, in the very process

of doing same, to take ameliorative steps to correct some discovered ill instanter.

We are satisfied that the district court was correct in its determination that the State or its employees breached no duty to plaintiff within the claims of those specifications of negligence previously identified as (2), (3), or (4). Assuming that plaintiff was within a class of persons for whose benefit bureau of labor employees were required to act under the applicable statutes and administrative regulations, these statutes and regulations did not impose a duty to instruct, warn, or supervise plaintiff concerning those dangers which caused his injury.

As did the district court, we interpret these statutes and regulations as only imposing the obligation to review the employer's safety and health program within the scope of the employer's request and provide advice on modifications or additions to make the program more effective. If the employees assigned this task determine that an identified hazard exists, their obligation is to assist the employer in developing a plan to correct the hazard, affording a reasonable period of time to accomplish that result. It is not the obligation of these employees to act directly to alleviate work site hazards contemporaneously with the discovery of same.

II. *Whether the Bureau of Labor Employees Assumed a Duty to Instruct Plaintiff Correctly Concerning the Required Mask.*

We next consider plaintiff's contention that employees of the State were imposed with a common-law duty not to affirmatively misadvise him concerning the safety qualities of the mask those employees inspected. This argument is premised on the facially valid proposition that, even where there is no duty to assist a person at risk, there is a duty to avoid affirmative action which might make that person's situation even worse. *See* W. Prosser & W. Keeton, *The Law of Torts* § 56, at 378 (5th ed. 1984). There is some indication in the present record that plaintiff was uncertain about the protective qualities of the mask

in question. That was a circumstance which conceivably might have deterred him from using the mask absent some assurance from a supposedly knowledgeable source.

■ The district court agreed with plaintiff's contention that the bureau of labor employees breached a duty owed plaintiff if they affirmatively misadvised him concerning the protective qualities of the mask. However, the court rejected this theory as a basis for liability because of the misrepresentation exception to tort liability contained in Iowa Code section 25A.14(4). In reviewing the claims asserted, we conclude that the district court was correct.

We believe that the applicability of the misrepresentation exception relied on by the district court was established adversely to plaintiff in *Adam v. Mount Pleasant Bank & Trust Co.*, 340 N.W.2d at 252–54, and *Hubbard v. State*, 163 N.W.2d 904, 911 (Iowa 1969). In *Adam*, we reviewed relevant decisions of the Supreme Court interpreting the misrepresentation exception contained in the federal tort claims act. We deemed these decisions to be persuasive authority in view of the similarity in the statutory provisions. Based on our analysis of these decisions and on our own prior determination in *Hubbard*, we determined that the misrepresentation exception applied to bar recovery if the damages alleged were caused by a negligent communication of information.

Notwithstanding our conclusion in *Adam*, we reversed the district court's grant of summary judgment in that case because of our belief that overlapping negligence claims allowed plaintiff to establish a causation chain for the claimed injuries through forces other than the miscommunication of information. To the extent that this possibility exists in the present case, the overlapping claims are invalid for reasons other than a section 25A.14(4) defense.

■ The claims previously identified as specifications of negligence (2), (3), and (4) have been found to be without merit in our prior discussion. We conclude that the re-maining claim, identified as specification of negligence (1), is also invalid. That claim asserts negligence on the part of the State in training the bureau of labor employees. It is doubtful whether there is any support for this contention. Even if there were, however, we conclude that negligent employee training can in no event give rise to liability of the State in instances in which the conduct of the employee, which produces the claimed injury, is not negligent or is immunized from liability by a specific statute.

We have considered all issues presented and find no basis for overturning the judgment of the district court. That judgment is affirmed.

AFFIRMED.