Cecelia M. BOHAN, David Buechele, Regina F. Cherrier, Keith Clark, Edna Clark, Joni Davis, Bruce Davis, Mary Ann Gau, Walter L. Gau, Josephine C. Gordon, Raymond Gordon, Lucas J. Haas, Nicholas C. Haas, Randal K. Haas, Jean A. Hamblin, Armella M. Herbst, Ann R. Herr, Daniel L. Herr, Michael R. Herr, Richard L. Herr, Richard P. Kennedy, Dorothy Kennicker, Leroy Kennicker, Jennifer L. Knight, Anne D. Kretz, Larry L. Kretz, Thomas J. Kretz, Berneice K. Mahe, John B. Mccoy, Dallas Mulgrew, Terry D. Mulgrew, Richard S. Osborne, Jr., Estate Of Lucille C. Prier By Wilfred F. Prier, Executor, John Reckord, William C. Reckord, Carol S. Spinoso, Joseph S. Spinoso, Sr., Joe Spinoso, Jr., Shirley Spinoso, Dalene Temperly, Richard J. Trausch, Dawn T. Tressel, B.J. Udelhoven, Paula Welu, Robert E. Welu, Irma J. Wiley, Raymond E. Williams and Jeanne M. Zenner, Appellants,

v.

Michael P. HOGAN III d/b/a M.P. Hogan Financial Services, and Berthel Fisher & Company Financial Services, Inc., Defendants,

and

Printer's Plus, Inc., Appellee.

Dana K. BUECHELE, Michael C. Fischels, and Norma J. Fischels, Appellants,

v.

Michael P. HOGAN III d/b/a M.P. Hogan Financial Services, and Berthel Fisher & Company Financial Services, Inc., Defendants,

and

Printer's Plus, Inc., Appellee.

Nos. 96–557, 96–1218.

Supreme Court of Iowa.

July 23, 1997.

Robert Sudmeier, Mark J. Willging, and Stephen J. Juergens of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, Leo A. McCarthy of Reynolds & Kenline, L.L.P., Dubuque, William A. Lansing, Dyersville; James J. Roth of Roth & Henkels, Dubuque, Paul J. Fitzsimmons, Dubuque, William G. Blum, Dubuque, and David W. Leifker, Dubuque, for appellants.

Les V. Reddick of Kane, Norby & Reddick, P.C., Dubuque, for appellee.

Considered by LARSON, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

We consider in a single opinion the separate appeals of three groups of investors—the plaintiffs in No. 96–557, the intervenors in No. 96–557, and the plaintiffs in No. 96–1218. Each group of investors brought claims against a securities broker named Michael P. Hogan III, alleging that he had secured funds from them for investment and converted these funds to his own use. It is further alleged that Hogan was able to deceive these investors by delivering to them fictitious certificates of deposit purported to have been issued by the LaSalle National Bank of Chicago. These investors also sought relief from Berthel Fisher & Company Financial Services (Berthel Fisher), the brokerage firm that employed Hogan, on theories of respondeat superior and failure to supervise its employees.

The claims against Hogan and Berthel Fisher are not at issue on this appeal. What is at issue is a claim by all three groups of investors against Printer's Plus, Inc. (Printer's Plus), an Iowa corporation located in Dubuque. That claim asserts that Printer's Plus is liable to the claimants for negligently printing certificates of deposit evidencing the debt of the LaSalle National Bank of Chicago without ascertaining the authority of a local securities broker to arrange for this printing contract on behalf of a large Chicago bank. These claims against Printer's Plus were dismissed by the district court in both actions on the ground that they failed to state a claim on which relief may be granted. After considering the arguments of the parties, we reverse those rulings and remand the cases to the district court for further proceedings.[1]

In ruling on motions to dismiss under Iowa Rule of Civil Procedure 104(b), this court has recognized that the test for determining whether a petition fails to state a claim upon which relief may be granted is the following:

A motion to dismiss grounded on failing to state a claim "is sustainable only when it

---

1. The appellee urges that these appeals are from interlocutory orders because the actions in the district court are not yet final as to all issues and all parties. We agree with that contention but conclude that determination of these interlocutory issues in advance of final judgment will serve to foster the expeditious disposition of the litigation. *See Banco Mortgage Co. v. Steil,* 351 N.W.2d 784, 787 (Iowa 1984). Accordingly, we grant permission to present the appeals under Iowa Rule of Appellate Procedure 1(c).

appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be proved in support of the claim asserted." Also, "[i]n making this determination the pleading should be construed in the light most favorable to the pleader with doubts resolved in [the pleader's] favor and the challenged allegations accepted as true." *Citizens for Washington Square v. City of Davenport,* 277 N.W.2d 882, 883–84 (Iowa 1979) (quoting *Weber v. Madison,* 251 N.W.2d 523, 525 (Iowa 1977)). *See also American Nat'l Bank v. Sivers,* 387 N.W.2d 138, 139 (Iowa 1986); *Kleman v. Charles City Police Dep't,* 373 N.W.2d 90, 93 (Iowa 1985).

The district court based its determination that no legal claim was stated by any of these appellants on two theories. First, it believed that appellants' claims depended in their entirety on a duty to control the conduct of a third person. We have recognized that, ordinarily, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person to prevent that person from harming others. *Fitzpatrick v. State,* 439 N.W.2d 663, 667 (Iowa 1989); *Hildenbrand v. Cox,* 369 N.W.2d 411, 415 (Iowa 1985); *Smith v. State,* 324 N.W.2d 299, 301–02 (Iowa 1982). This rule has been the basis for approving the granting of motions to dismiss under rule 104(b) when it appears on the face of the pleadings that controlling the conduct of third persons was the gravamen of the claim and that no special relationship existed between the parties. *See Callahan v. State,* 385 N.W.2d 533, 537–38 (Iowa 1986); *Smith,* 324 N.W.2d at 301–02.

As a second reason for dismissing the claims, the district court read our decision in *Keller v. State,* 475 N.W.2d 174, 179 (Iowa 1991), as limiting negligence claims that may be maintained in the absence of a special duty to harms that are a direct, as opposed to indirect, consequence of the actor's negligence.

■ In considering the first reason for the district court's ruling, we are convinced that the claims that appellants have stated against Printer's Plus in their respective petitions and petition of intervention are not solely, or even primarily, premised on controlling the conduct of a third person. They are, rather, premised on the allegation that, under the circumstances existing, Printer's Plus should have realized a risk of harm existed to others from its printing of certificates of deposit evidencing indebtedness of a large Chicago bank at the behest of an individual bearing no ostensible relationship to that bank. That allegation, we believe, is an assertion of Printer's Plus's own active negligence in furnishing an instrumentality that caused harm to these claimants. We are unable to conclude that there could be no set of facts proved that would support a claim of actionable negligence on the part of Printer's Plus based on this theory.

■ We also believe that the district court has misread our opinion in *Keller.* We stated in that case that

> linking the existence of legal duty to a particular relationship between the parties is not an unwavering requirement for all negligence torts. Such linkage is not required, *for instance,* when the direct consequences of a negligent act causes harm to another. It is required, however, for most claims based on an alleged failure of an actor to aid or protect another person or to control the conduct of a third party.

*Keller,* 475 N.W.2d at 179 (emphasis added).

The inclusion of the italicized words "for instance" in the above language indicates quite clearly, we believe, that the reference to injuries that are the direct consequence of a negligent act was given by way of example. This example was intended to negate the universality of any requirement that there be a special relationship between the parties in order to maintain an action based on negligence. As the later discussion in *Keller* suggests, the significant dichotomy in determining these issues is not a direct versus indirect consequence of the actor's conduct but, rather, whether the alleged misbehavior is an affirmative act undertaken in a negligent manner as opposed to a failure to act at all. It is in the latter case that the special-relationship requirement is ordinarily im-

posed in order to give rise to a legal duty. In the case of active misfeasance, however, the determination of legal duty is ordinarily subsumed within the determination of whether the nature of the challenged conduct is such that the actor should realize it presents an unreasonable risk of harm to others. *See* Restatement (Second) of Torts § 314 cmt. c (1965) [hereinafter Restatement].

■ When the claim does not involve the failure of an actor to protect another person or to control the conduct of a third party, the elements of the cause of action for negligence, as outlined in section 281 of the Restatement, do not include a discrete determination of legal duty.[2] The elements are comprised of a determination of whether the actor is negligent with respect to another person or class of persons and such negligence is a legal cause of harm. Those sections of the Restatement that follow and that pertain to misfeasance, as opposed to nonfeasance, deal with the determination of what conduct poses an unreasonable risk of harm to another. Included among these provisions is section 302A, which provides:

> An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other *or a third person.*

(Emphasis added.) Section 302B of the Restatement provides:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another *through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.*

(Emphasis added.)

With respect to recognizing the existence of risk, the Restatement provides:

> The actor is required to recognize that his conduct involves a risk of causing an inva-

sion of another's interest if a reasonable man would do so while exercising

> (a) such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a reasonable man would have; and

> (b) such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has.

Restatement § 289. In applying this rule at the pleading stage of the present controversy, we are unable to conclude that there is no state of facts that might be proved that would establish Printer's Plus acted in a negligent manner causing injury to these claimants. Of course, we express no opinion at this stage of the litigation whether that proof will in fact be forthcoming.

We have considered the issues presented and conclude that the rulings of the district court must be reversed as to the claims of the plaintiffs and intervenors in No. 96–557 and the plaintiffs in No. 96–1218. The cases are remanded to the district court for further proceedings.

**REVERSED AND REMANDED.**

---

2. As stated in a leading treatise on torts:
   > The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. It is a shorthand statement of a conclusion, rather than an aid to analysis in itself.
   > W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53, at 357–58 (5th ed.1984) (citations omitted).