**Bruce E. SAIN II, Appellant,**

v.

**CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT a/k/a Cedar Rapids Community Schools, Appellee.**

No. 98–2273.

Supreme Court of Iowa.

April 25, 2001.

Anne E. Updegraff of the Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Matthew G. Novak and Thad J. Collins of Pickens, Barnes & Abernathy, Cedar Rapids, for appellee.

CADY, Justice.

This appeal requires us to decide whether an action for negligence should be recognized based upon inaccurate information concerning the course requirements to compete in intercollegiate sports at a National Collegiate Athletic Association (NCAA) Division I university as a freshman allegedly given to a high school student by a guidance counselor. The district court found no cause of action existed as a matter of law and granted summary judgment. On review of the facts in the light most favorable to the student, we conclude summary judgment was improperly granted. We reverse the decision of the district court and remand for further proceedings.

### I. Background Facts and Proceedings.

Bruce Sain attended Jefferson High School in Cedar Rapids during his junior and senior years. Jefferson is included within the Cedar Rapids Community

School District. Sain was a member of the varsity basketball team at Jefferson and maintained aspirations of receiving a scholarship to play basketball for a major college. He received many basketball accolades and awards during high school, including selection to the all-state basketball team.

Sain's guidance counselor at Jefferson was Larry Bowen. Bowen was generally familiar with the high school credits and course requirements imposed by the NCAA for incoming student-athletes to be eligible to compete in sports as a freshman at those Division I institutions which maintain membership in the NCAA. One such rule requires a student to complete three years of English courses approved by the NCAA, as well as core courses in mathematics, science, and the social sciences. The NCAA maintains a list of high school courses for each school which satisfy the core course requirements for each discipline. This list is known as Form 48—H. A high school submits the courses it offers to students to the NCAA for approval. A separate organization known as the NCAA Initial Eligibility Clearinghouse is responsible for evaluating and approving the courses submitted. The Clearinghouse identifies for each high school those courses which qualify as core courses and updates the list annually to reflect any changes or additions. This list is sent to each high school by the Clearinghouse.

Sain had satisfied some of the required courses in the various disciplines prior to beginning his senior year, but needed to take three approved English courses during the three trimesters of his senior year

to meet the NCAA core course requirements for English.

Sain began his senior year at Jefferson in the fall of 1995. During the first trimester he enrolled in and satisfactorily completed an English course entitled "World Literature." This course was included in the NCAA list of approved core English courses. He registered to take a course entitled "English Literature" during the second trimester. This class was also approved by the NCAA as a core English course. Sain, however, was dissatisfied with the class and met with Bowen to determine if he could drop it and add another English course. Bowen suggested Sain take a different English course entitled "Technical Communications." It was a course in modern communications offered by the school district for the first time during the 1995–96 school year. Bowen believed the course would be compatible with Sain's interest in computers. Additionally, Bowen told Sain that the course would be approved by the NCAA as a core English course.[1] Sain subsequently dropped "English Literature" from his schedule and enrolled in the "Technical Communications" course. He satisfactorily completed the course, as well as another English course during the final trimester.

The school failed to include the "Technical Communications" course on the list of classes submitted to the NCAA for approval. Although the high school typically submitted a list of its courses each year to the NCAA, it left the "Technical Communications" course off the list it submitted in 1995. Consequently, the course was not approved by the Clearinghouse and was not included on Form 48–H. However,

---

1. The counselor and school district deny Sain was told the course would be approved by the NCAA. Other critical facts in the case are also in dispute. For the purpose of summary judgment, however, we consider the facts in a light most favorable to Sain. Sain testified in a deposition that Bowen told him the "Technical Communications" course "would be passed by the NCAA Clearinghouse as an English credit course."

the course had been approved by two of the three state universities in Iowa as a core English course. It was also approved by the National Council of Teachers of English.

During the final trimester of high school, Sain was offered and accepted a full five-year basketball scholarship at Northern Illinois University beginning in the fall semester of 1996. Pursuant to the letter of intent and NCAA rules, Sain agreed to enroll at Northern Illinois University and participate in intercollegiate sports as a member of the university men's basketball team in exchange for the full ride athletic scholarship. The Northern Illinois University basketball program participates in Division I of the NCAA.

Sain graduated from Jefferson High School in the spring of 1996. Shortly after graduation, Sain received a letter from the NCAA Clearinghouse. The Clearinghouse informed Sain that the "Technical Communications" course he took during the second trimester did not satisfy the core English requirements. This meant only two of the three English courses taken by Sain during his senior year had been accepted by the NCAA Clearinghouse, and Sain fell one-third credit short of the core English requirements to participate in Division I basketball as a freshman. Sain and Northern Illinois University requested a waiver from the NCAA. The request was denied and Sain lost his scholarship. As a result, Sain was unable to attend Northern Illinois University during the 1996–97 school year and compete in basketball for the school.[2]

Sain brought this action against the school district and the NCAA. The claim against the NCAA was later voluntarily dismissed.

The action against the school district was based on separate claims of negligence and negligent misrepresentation under the Restatement (Second) of Torts section 552(1) (1977). Sain claimed Bowen breached a duty to provide competent academic advice concerning the eligibility to participate in Division I sports as a freshman. He also claimed the school district was negligent in failing to submit the "Technical Communications" course to the NCAA for pre-approval.

The school district moved for summary judgment. The district court granted the motion. It found the negligence theory was a claim for educational malpractice, and determined the claim was required to be dismissed because a school counselor has no duty to a student as a matter of law to use reasonable care in providing course information. It also found the claim for negligent misrepresentation did not apply to an educational setting, but was limited to commercial or business transactions.

Sain appeals. He claims the nature of the relationship between a student and guidance counselor imposes a duty on the counselor to use reasonable care when giving specific information about the course requirements for admission to college or participation in college athletics and submitting courses to the NCAA for approval. He also claims the recognized tort of negligent misrepresentation is broad enough to hold a guidance counselor liable for providing specific information to a student pertaining to the required courses and credits necessary to pursue post-high school goals.

2. A student has several options if declared ineligible to compete as a freshman. One option is to enroll at the university at the student's own expense and retain three years of athletic eligibility as opposed to the five years of eligibility otherwise available to freshmen. Sain, however, did not have the funds to enroll at Northern Illinois University at his own expense.

## II. Scope of Review.

■ We review rulings on motions for summary judgment for corrections of errors at law. *Teague v. Mosley*, 552 N.W.2d 646, 648 (Iowa 1996). We "review the record before the district court to determine whether an issue of material fact exists, and ... whether the district court properly applied the law." *Howell v. Merritt Co.*, 585 N.W.2d 278, 280 (Iowa 1998).

## III. Educational Malpractice.

We begin by considering the nature of Sain's claim. We have refused to recognize a cause of action in Iowa for educational malpractice. *Moore v. Vanderloo*, 386 N.W.2d 108, 113–15 (Iowa 1986). Consequently, the district court properly dismissed the action under *Moore* if Sain's theory of recovery in this case falls within the parameters of educational negligence.

■ In *Moore*, we recognized three categories of educational malpractice. *Id.* at 113. The first category involves basic academic instruction or misrepresentation of the level of academic performance. *Id.* The second category deals with placing or failing to place a student in a specific educational setting. *Id.* The third category concerns supervision of student performance. *Id.* We identified five policy reasons for our refusal to make these categories actionable. These reasons include the absence of an adequate standard of care, uncertainty in determining damages, the burden placed on schools by the potential flood of litigation that would probably result, the deference given to the educational system to carry out its internal operations, and the general reluctance of courts to interfere in an area regulated by legislative standards. *Id.* at 114–15.

The school district argues Sain's action falls within the placement and supervision categories of educational malpractice. It asserts the action involves the supervision of a student by a guidance counselor and the placement of a student in a particular class.

■ Although there is no established definition of educational malpractice, our three recognized categories reveal the action centers on complaints about the reasonableness of the conduct engaged in by educational institutions in providing their basic functions of teaching, supervising, placing, and testing students in relationship to the level of academic performance and competency of the student. *See* Dan B. Dobbs, *The Law of Torts* § 259, at 690–91 (2000) [hereinafter Dobbs]; ·Timothy Davis, *Examining Educational Malpractice Jurisprudence: Should a Cause of Action Be Created for Student–Athletes?*, 69 Denv. U.L.Rev. 57, 61 (1992) [hereinafter Davis]. The theory alleges professional misconduct analogous to medical and legal malpractice, and seeks to impose a duty on schools to provide a level of education appropriate for the student. Davis, 69 Denv. U.L.Rev. at 61.

Educational malpractice is almost universally rejected as a cause of action because the issues framed by the claim must necessarily be answered in the context of those principles of duty and reasonableness of care associated with the tort law of negligence. *CenCor, Inc. v. Tolman*, 868 P.2d 396, 399 (Colo.1994). As we recognized in *Moore*, these tort principles can be extremely difficult, if not nearly impossible, to apply to an academic setting for a variety of reasons. *See Moore*, 386 N.W.2d at 114–15; *see also Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 687 A.2d 111, 119 (1996). This, and the other policy considerations discussed in *Moore*, support the rejection of a duty of care within an academic environment.

Although the claim in this case generally relates to the educational functions of su-

pervision and placement, it is unrelated to most of the policy concerns identified in *Moore.* Unlike the categories of malpractice described in *Moore,* the claim of misrepresentation in this case does not challenge classroom methodology or theories of education. It is also unrelated to academic performance or the lack of expected skills. It does not intervene into the internal operations, curriculum or academic decisions of an educational institution, or any assigned function of a school under state law. Finally, it does not interfere with the legislative standards and policies of competency. Instead, the thrust of the action asserts a specific act of providing specific information requested by a student under circumstances in which the school knew or should have known the student was relying upon the information to qualify for future educational athletic opportunities. In this context, the resolution of the claim does not require courts to interfere in the daily operation of the school or challenge the policies of education. *See* Dobbs § 259, at 690. Furthermore, there is little fear that an appropriate standard of care cannot be articulated. *See id.* The claim is more compatible with other claims for misrepresentation against professionals by clients who have sought out their expertise. In this case, under the state of the facts we must accept, Sain looked to advice from Bowen, who was in a position to provide the requested advice. Thus, the same difficulties of applying negligence standards to claims of educational malpractice do not exist in this case.

We must be careful not to reject all claims that arise out of a school environment under the umbrella of educational malpractice. *Id.* at 692. Instead, the specific facts of each case must be considered in light of the relevant policy concerns that drive the rejection of educational malpractice actions. *See id.* In light of those policy considerations, we conclude this case is distinguishable from *Moore* by its facts.

■■ Our failure to recognize claims for educational malpractice actually represents a determination that the duty of care of a school does not extend to the circumstances which we recognize fall within the categories of educational malpractice. We, of course, recognize a school has a duty of care to a student under different circumstances. Thus, schools or schoolteachers can be subject to liability for negligence in failing to exercise reasonable care in supervising students or maintaining dangerous conditions. *See Anderson v. Webster City Cmty. Sch. Dist.,* 620 N.W.2d 263, 266 (Iowa 2000); *City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.,* 617 N.W.2d 11, 17–18 (Iowa 2000). A school clearly owes a duty of reasonable care to a student. The question we face in this case is whether the duty to exercise reasonable care extends to either providing information to a student under the circumstances alleged in this case or submitting courses to the NCAA.

## IV. Negligent Misrepresentation— Providing Information.

The tort of negligence has developed into a broad and open-ended cause of action. *See* Dobbs § 110, at 257–58. Unlike the intentional trespassory torts that are generally geared toward specific conduct, a cause of action for negligence may find support in most any conduct. *See id.* Although the familiar elements of duty, breach of care, proximate cause, and damages must always be established, most any circumstances not exempted by a special rule or a statute can be used to prove these elements. *See id.* § 112, at 264–65. Negligence has clearly emerged as "the central focus of modern tort law." Peter F. Lake, *Common Law Duty in Negli-*

*gence Law: The Recent Consolidation of a Consensus on the Expansion of the Analysis of Duty and the New Conservative Liability Limiting Use of Policy Considerations,* 34 San Diego L.Rev. 1503, 1503 (1997). The expansive nature of the tort has challenged courts in not only applying the principles of negligence to accommodate its growth into new areas of human interaction, but to properly limit the tort within certain boundaries as well. *See id.* at 1504–05.

Although misrepresentation is recognized as a distinct and separate cause of action, misrepresentation based on negligent conduct has typically been addressed within the framework of a claim for negligence when the conduct has caused personal injury or property damage. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 105, at 725–26, § 107, at 745 (5th ed.1984) [hereinafter Keeton]. Courts have never found a need to treat negligent misrepresentation as a separate basis for liability when the interference consists of personal or property damage. *Id.* § 105, at 726. On the other hand, when misrepresentation based on negligent acts results solely in an interference with intangible economic interests, more restrictive rules of recovery have been developed. *Id.* § 107, at 745. This has been mainly due to the fear that liability for misinformation could be virtually unlimited and include unknown claimants under the traditional foreseeability limitation applicable to negligence claims. *See* Restatement (Second) of Torts § 552 cmt. a (The scope of liability for negligent misrepresentation resulting in pecuniary harm is not governed by the same negligence principles for negligent misrepresentation resulting in physical harm. A restricted rule of liability is followed for negligent misrepresentation resulting in pecuniary harm because of the fear of unlimited liability.); Keeton § 107, at 745. Thus, the tort of negligent misrepresentation has taken the form of limiting "the group of persons to whom [a] defendant may be liable, short of the foreseeability of possible harm." Keeton § 107, at 745.

We first recognized the tort of negligently giving misinformation with this limitation on the scope of liability in *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969). In that case, we permitted a third party who reasonably relied upon financial statements prepared by an accountant to maintain a negligence action against the accountant for misinformation in the statements when the accountant knew the information was intended for the benefit and guidance of the third party. *Ryan,* 170 N.W.2d at 403. We recognized professionals such as accountants, abstractors, and attorneys owe a duty of care in supplying information to foreseeable third parties as members of a limited class of persons who would be contemplated to use and rely upon the information. *Id.* at 402. Thus, we joined the drafters of the tentative draft of the Restatement (Second) of Torts section 552 to the extent that they recognized "the right to recover for negligence to persons for whose benefit and guidance the accountant knows the information is intended." *Ryan,* 170 N.W.2d at 403. Instead of using foreseeability of harm to limit the scope of the duty of care, we relied upon a stricter standard of knowledge.

We have continued to recognize negligence claims for misinformation following *Ryan,* and continue to utilize the Restatement (Second) of Torts section 552 to help define the tort. *See Freeman v. Ernst & Young,* 516 N.W.2d 835, 837 (Iowa 1994) (genesis of tort of negligent misrepresentation is the Restatement (Second) of Torts section 552). This section provides:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).

▮▮▮▮ As with all negligence actions, an essential element of negligent misrepresentation is that the defendant must owe a duty of care to the plaintiff. In the context of negligent misrepresentation, this means the person who supplies the information must owe a duty to the person to whom the information is provided. Although the Restatement supports a broader view, we have determined that this duty arises only when the information is provided by persons in the business or profession of supplying information to others. *Hendricks v. Great Plains Supply Co.*, 609 N.W.2d 486, 492 (Iowa 2000); *see Meier v. Alfa–Laval, Inc.*, 454 N.W.2d 576, 581 (Iowa 1990) (providing false information is not actionable if the person is not in the business or profession of supplying information).[3] Thus, when deciding whether the tort of negligent misrepresentation imposes a duty of care in a particular case, we distinguish between those transactions where a defendant is in the business or profession of supplying information to others from those transactions that are arm's length and adversarial. *See Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 227 (Iowa 1998); *Fry v. Mount*, 554 N.W.2d 263, 265–66 (Iowa 1996); *see also Freeman*, 516 N.W.2d at 838; *Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994); *Meier*, 454 N.W.2d at 581–82. We recognize the former circumstances justify the imposition of a duty of care because a transaction between a person in the business or profession of supplying information and a person seeking information is compatible to a special relationship. *See Meier*, 454 N.W.2d at 581; *see also* 2 Fowler V. Harper et al., *The Law of Torts* § 7.6, at 412–13 (2d ed.1986) [hereinafter Harper] ("remedy for negligent misrepresentation [is] principally against those who advise in an essentially nonadversarial capacity"). A special relationship, of course, is an important factor to support the imposition of a duty of care under a claim for negligence. *See J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.*, 589 N.W.2d 256, 259 (Iowa 1999). Moreover, a person in the profession of supplying information for

---

3. The language of section 552 does not expressly provide that the tort applies only to persons who are in the business or profession of supplying information. Instead, it requires the provider to supply information "in the course of his business, profession or employment," or to supply information "in any other transaction in which he has a pecuniary interest." Restatement (Second) of Torts § 552(1) (1977); *see State by Bronster v. United States Steel Corp.*, 82 Hawaii 32, 919 P.2d 294, 307–08 (1996) (tort applicable when supplying information either for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession, or employment); *Smith v. Brutger Cos.*, 569 N.W.2d 408, 414 (Minn. 1997) (same). The comments to section 552 indicate that the imposition of a duty of care in supplying information is based upon the presence of a pecuniary interest in the transaction. Restatement (Second) of Torts § 552 cmts. c, d. There are, then, two ways under the Restatement to establish this requirement. The information can be supplied by a person whose business it is to provide information, or the person otherwise has a pecuniary interest in the transaction in which the person supplies the information. *Id.; see State by Bronster*, 919 P.2d at 308. Notwithstanding, we have limited the tort to persons in the business or profession of supplying information to others.

the guidance of others acts in an advisory capacity and is manifestly aware of the use that the information will be put, and intends to supply it for that purpose. *See* Restatement (Second) of Torts § 552 cmt. a; *see also* Dobbs § 472, at 1350–51; 2 Harper § 7.6, at 405–06. Such a person is also in a position to weigh the use for the information against the magnitude and probability of the loss that might attend the use of the information if it is incorrect. Restatement (Second) of Torts § 552 cmt. a. Under these circumstances, the foreseeability of harm helps support the imposition of a duty of care. *See J.A.H. ex rel. R.M.H.*, 589 N.W.2d at 258 (reasonable foreseeability of harm to person who is injured is a factor in deciding whether a legal duty exists). Additionally, the pecuniary interest which a person has in a business, profession, or employment which supplies information serves as an additional basis for imposing a duty of care. *See* Restatement (Second) of Torts § 552 cmts. c, d. On the other hand, information given gratuitously or incidental to a different service imposes no such duty. *See id.; see also Meier*, 454 N.W.2d at 581–82 (defendant in business of selling and servicing merchandise, not supplying information).

Thus, our approach in the application of the tort of negligent misrepresentation has been to consider the facts of each case to determine if the defendant is in the business or profession of supplying information to others. *See Hendricks*, 609 N.W.2d at 492; *Fry*, 554 N.W.2d at 265; *Haupt*, 514 N.W.2d at 910. The facts to support the tort, however, have traditionally arisen only in the context of commercial transactions. Historically, those cases which were responsible for developing the tort arose from a business or financial setting, and the recognition of negligent misrepresentation as a separate tort has from the beginning been confined largely to financial or commercial harm in the course of business dealings. *See* Keeton § 105, at 726. Consequently, the tort is generally thought to only apply to business transactions. *See Pickering v. Pickering*, 434 N.W.2d 758, 762 (S.D.1989) (claim by husband against wife for negligent misrepresentation did not arise from a business transaction); *Robinson v. Omer*, 952 S.W.2d 423, 428 (Tenn.1997) (advice supplied was for guidance in personal affairs, not business); *see also G.A.W. v. D.M.W.*, 596 N.W.2d 284, 290 (Minn.Ct.App.1999) (Minnesota courts have only recognized the tort of negligent misrepresentation in a business or commercial setting). On the other hand, we observe that some courts have applied the tort in other contexts, such as adoption. *See Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 891–93 (1994); *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 287–88 (Minn. 1992); *Meracle v. Children's Serv. Soc'y of Wisconsin*, 149 Wis.2d 19, 437 N.W.2d 532, 536–37 (1989). Yet, no jurisdiction has recognized a tort in the context of a school counselor and a student.

▮▮▮▮ Our examination of both section 552 and our own cases reveals the business or commercial requirement for the tort does not actually concern the subject matter of the transaction between the plaintiff and the defendant, but requires the defendant to be in the business or profession of supplying information for the guidance of others. This is the fundamental requirement to support the imposition of a duty, which is essential for all negligence claims. *See Alderson v. Rockwell Int'l Corp.*, 561 N.W.2d 34, 36 (Iowa 1997) ("[o]ur general rule is that negligent misrepresentation under Restatement section 552 applies only to a defendant who is in the business [or profession] of supplying information to others"). Additionally, the language of section 552 requires the information to not only be supplied "for the guidance of others," but "for the guidance

of others in their business transactions." Restatement (Second) of Torts § 552(1). Yet, this additional requirement also does not exist to restrict the subject of the information to business matters. Instead, the supplied "for the guidance of others in their business transactions" requirement recognizes that the tort predominantly applies to situations where the information supplied harmed the plaintiff in its relations with third parties, as opposed to harm to a plaintiff in its relations with the provider of the information. *See State by Bronster*, 919 P.2d at 311. This means the tort does not apply when a defendant directly provides information to a plaintiff in the course of a transaction between the two parties, which information harms the plaintiff in the transaction with the defendant. *See Fry*, 554 N.W.2d at 265–66 (information was given to plaintiff by the defendant only in the context of a particular transaction between the parties, not to guide plaintiff generally). This situation is compatible with our approach that there is no duty imposed on parties who deal at arm's length. *Id.* at 265.

We conclude that the context of the transaction in this case does not draw the case outside the scope of the tort of negligent misrepresentation. Instead, our task, as in other cases which assert a claim of negligent misrepresentation, is to determine if the defendant—a high school counselor in this case—is in the profession of supplying information to others.

In deciding this question, we observe that those same characteristics which exist when a person is found to be in the business of supplying information to others also exist in the case of a high school counselor. The counselor and student have a relationship which extends beyond a relationship found in an arm's length transaction. It is advisory in nature and not adversarial. The school counselor does not act for his or her own benefit, but provides information for the benefit of students. Furthermore, in matters that involve matriculation from high school to college, a high school counselor clearly assumes an advisory role, is aware of the use for the information, and knows the student is relying upon the information provided. Additionally, the counselor is paid by the school system to provide such advice, and has an indirect financial interest in providing the information. *See* Restatement (Second) of Torts § 552 cmt. d (pecuniary interest may be indirect). Thus, the counselor does not provide gratuitous information that the counselor would not expect the student to rely upon. Furthermore, the information is not incidental to some more central function or service provided by the counselor. *See Meier*, 454 N.W.2d at 581.

■ Considering the rationale which supports the imposition of a duty of care on a person in the business or profession of supplying information, we discern no reason why a high school counselor should not fall within the category as a person in the profession of supplying information to others to support the imposition ·of a duty of reasonable care in the manner he or she provides information to students. We should not confine the tort to traditional commercial transactions when the rationale for the tort allows it to be applied beyond those factual circumstances which originally gave rise to the tort. In *Ryan* we indicated the tort applies not only to accountants, but logically can be extended to other professional purveyors of information. *Ryan*, 170 N.W.2d at 402 (tort could also apply to attorneys and abstractors); *see Fry*, 554 N.W.2d at 265. For the purposes of the tort of negligent misrepresentation, we conclude a high school counselor is also a person in the profession of supplying information to others.

We understand that our expansion of the tort of negligent misrepresentation to include a high school counselor and a student relationship will impose a greater burden on school counselors. There is a concern, of course, that this greater burden may have a chilling effect on school counselors, who may refrain from providing information because of the potential for liability. However, any concern is diminished by the further limitations expressed in section 552(2), which provides as follows:

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Thus, liability for negligent misrepresentation is limited to harm suffered by a person for whose benefit and guidance the counselor intended to supply the information or knew the recipient intended to supply it and to loss suffered through reliance upon the information in a transaction the counselor intended the information to influence. *See Knutson v. Bitterroot Int'l Sys., Inc.*, 5 P.3d 554, 560 (Mont.2000) (section 552(1) requires that the plaintiff was justified in relying upon the information); *see also Rubinstein v. Collins*, 20 F.3d 160, 172 (5th Cir.1994). Additionally, we observe that the tort applies only to false information and does not apply to personal opinions or statements of future intent.[4] *See Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 584 n. 6 (Ind.Ct. App.1999) (claim failed because statements made were opinions); *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 4 P.3d 1149, 1165 (2000) (tort of negligent misrepresentation does not apply to statements of future intent); *Trimble v. Washington State Univ.*, 140 Wash.2d 88, 993 P.2d 259, 264 (2000) (claim failed because statements made were not actually false); *see also* Restatement (Second) of Torts § 552 cmts. b, e. Finally, the standard imposed is only one of reasonableness, and the elements of proximate cause and damage must also be shown. Restatement (Second) of Torts § 552B (limited damages for negligent misrepresentation). Thus, these limitations will help to continue to promote the important public policy of encouraging interaction between high school counselors and students, and maintain the flow of necessary information to the students. We also observe that some states have enacted statutes giving schools and teachers immunity from any liability. *See Brown v. Compton Unified Sch. Dist.*, 68

4. In this case, the issue whether the counselor's alleged statement was a statement of present fact or a prediction has not been raised. This issue may be a question of law for the courts, but will depend not only on the particular language used but all the surrounding circumstances. *See Bittel v. Farm Credit Servs. of Cent. Kansas, P.C.A.*, 265 Kan. 651, 962 P.2d 491, 501 (1998); *see also Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149, 1165 (Kan. 2000). Nevertheless, it is not an issue presented on appeal at this time.

Cal.App.4th 114, 80 Cal.Rptr.2d 171, 172 (1998) (immunity from misrepresentations made within scope of employment); *Hendricks v. Clemson Univ.*, 339 S.C. 552, 529 S.E.2d 293, 297 (S.C.Ct.App.2000) (tort claims act shields educational institutions from liability for negligent acts); *see also* Dobbs § 259, at 689.

■ In this case, we find Sain has submitted sufficient facts to withstand summary judgment on the claim that the guidance counselor negligently told him that a specific English course would be certified by the NCAA Clearinghouse. The relationship between the high school counselor and the student, together with the activity engaged in by Sain and the counselor in this case, is sufficient to give rise to a duty for the counselor to use reasonable care when informing a student that a class will be approved by the NCAA. We continue to confine the tort of negligent misrepresentation to persons in the business or profession of supplying information to others, but find that a high school counselor falls within that language because the policies which support the imposition of a duty of care on such a person applies to a high school counselor.

## V. Negligent Misrepresentation—Failure to Submit Class.

■ The second prong of Sain's negligence claim is based upon the failure of the school district to include the "Technical Communications" course on the list of courses submitted to the NCAA. Like the first claim, Sain asserts the school district had a duty of care to submit the course and breached the duty when it failed to do so. Sain asserts the internal policies of the school to submit all courses for approval by the NCAA Clearinghouse supports such a duty.

■ We begin by recognizing that the tort of negligent misrepresentation does not apply to the failure to provide information, but to the disclosure of information. *See Outlook Windows P'ship v. York Int'l Corp.*, 112 F.Supp.2d 877, 896–97 (D.Neb. 2000). Thus, the imposition of a duty to support a claim of providing false information does not support the imposition of a duty for not disclosing information.

■ A claim for negligence can be based on both actions and inactions. However, liability for the failure to act to protect another from harm is largely restricted to those situations where there is a special relationship between the parties. *See Garofalo v. Lambda Chi Alpha Fraternity*, 616 N.W.2d 647, 652 (Iowa 2000); *Bohan v. Hogan*, 567 N.W.2d 234, 236 (Iowa 1997); *Fiala v. Rains*, 519 N.W.2d 386, 389 (Iowa 1994). It is essentially based upon a relationship of dependence and an expectation of protection. *See* Restatement (Second) of Torts § 314A cmt. b (1965).

Nevertheless, a duty of care is imposed to protect against the foreseeable risk of harm. The failure of a school district to submit a course for approval by the NCAA Clearinghouse would not increase the hazard of a student taking an unapproved course. If a school fails to submit a course, the course would not be included on the approved list. The absence of the course from the list would not induce reliance, and would not make it foreseeable that harm would result to a student by taking an unapproved course under the belief that the course was in fact approved. Thus, there is no duty to students for a school district or a high school counselor to submit courses to the NCAA Clearinghouse. *See Garofalo*, 616 N.W.2d at 654 (failure to follow policy of fraternity does not give rise to an actionable tort); *Smith v. City of Dubuque*, 376 N.W.2d 602, 605 (Iowa 1985) (breach of internal procedures does not give rise to a cause of action).

We conclude the district court properly granted summary judgment on this claim.

## VI. Conclusion.

 We conclude the district court erred in granting summary judgment on the claim of negligent misrepresentation involving information provided by the high school guidance counselor to the student. The tort of negligent misrepresentation is broad enough to include a duty for a high school guidance counselor to use reasonable care in providing specific information to a student when the guidance counselor has knowledge of the specific need for the information and provides the information to the student in the course of a counselor-student relationship, and a student reasonably relies upon the information under circumstances in which the counselor knows or should know that the student is relying upon the information. Additionally, we conclude the district court properly granted summary judgment on the claim of negligent misrepresentation involving the school's failure to submit the course to the Clearinghouse for approval.

**REVERSED AND REMANDED.**

All justices concur except NEUMAN and TERNUS, JJ., who dissent.

NEUMAN, Justice (dissenting).

I respectfully dissent. The majority's opinion, while methodical and thorough, ultimately exalts logic over experience. The result spells disaster for the law. For, as we all know, the life of the law is not logic but experience.[5]

Experience teaches us that guidance counselors—along with myriad others in our public schools—dispense volumes of information on a daily basis, some of it good, some perhaps not so good. Indeed, as the majority forcefully argues, educators are professionals in the business of supplying information. And we hope they take their information-giving jobs seriously, for the future of the next generation depends on them.

The question is, when academic advice goes awry, should a student be permitted to seek relief from the courts? The answer to date, as the majority concedes, has always been "no." Good reasons abound for this decision. *See Moore v. Vanderloo,* 386 N.W.2d 108, 113–15 (Iowa 1986) (dismissing alleged claim of educational malpractice). Courts are ill-equipped to pass judgment on the wisdom and value of a school's chosen curriculum. *Id.* We have thus been historically disinclined to do so.

The majority effectively jettisons this sound doctrine by theorizing that guidance counselors, being in the business of furnishing information, come within the ambit of section 552 of the Restatement (Second) of Torts. They may be liable, the majority holds, for the tort of negligent misrepresentation. For liability to attach under the rule, however, misinformation must be supplied "for the guidance of others *in their business transactions.*" Restatement (Second) of Torts § 552 (emphasis added). It is here, I think, that the majority's logic flies in the face of experience.

To accept the majority's decision, one must be willing to view the mentoring relationship between a guidance counselor and a student as no different than a business relationship between a purveyor of information and a consumer. I disagree with that premise. We may live in an information age, but experience tells me the sharing of knowledge in school is different than the sale of information in the marketplace.

---

5. Oliver Wendell Holmes, Jr., *The Common Law* (1881).

I am also concerned about the "floodgates" argument that discouraged us from moving in this direction in *Moore*. *See Moore*, 386 N.W.2d at 115. Implicit in the majority's reasoning is the suggestion that, when it comes to NCAA eligibility rules and athletic scholarships, business *is* the name of the game. But the cause of action we recognize today will not be limited to athletes. It will apply to all students, whether talented in music or debate or academics. Instead of encouraging sound academic guidance, today's decision will discourage advising altogether. I cannot join it.

TERNUS, J., joins this dissent.