Ryan Scott, Kathy Scott, and Patrick Scott,
Plaintiffs-Appellants-Petitioners,†

v.

Savers Property and Casualty Insurance Company,
and Stevens Point Area Public School District,
Defendants-Respondents,

Wausau Underwriters Insurance Company,
Defendant.

Supreme Court

*No. 01–2953. Oral argument March 4, 2003.—Decided
June 19, 2003.*

2003 WI 60

(Also reported in 663 N.W.2d 715.)

† **Motion for reconsideration denied 9-12-03.**

130

For the plaintiffs-appellants-petitioners there were briefs by *Russell T. Golla* and *Anderson, O'Brien, Bertz, Skrenes & Golla,* Stevens Point, and oral argument by *Russell T. Golla.*

For the defendants-respondents there was a brief by *Cari L. Westerhof* and *Ruder, Ware & Michler, LLSC,* Wausau, and oral argument by *Cari Lynn Westerhof.*

An amicus curiae brief was filed by *Michael Riley* and *Atterbury, Riley & Kammer, S.C.,* Madison, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE.—This is a review of an unpublished decision of the court of appeals[1] affirming the judgment of the Circuit Court for Portage County, James Mason, Judge. The circuit court dismissed the amended complaint of Ryan Scott and his parents, Kathy and Patrick Scott, against the Stevens Point Area Public School District and its insurer, Savers Property and Casualty Insurance Company. The circuit court concluded that the negligence claim in the amended complaint was barred under Wis. Stat. § 893.80(4) (2001–02)[2], Wisconsin's governmental immunity statute, and that the allegations of breach of contract and promissory estoppel failed to state claims upon which relief could be granted.

¶ 2. Ryan Scott and his parents, Kathy and Patrick Scott (the plaintiffs), allege that Dave Johnson, a guidance counselor at Stevens Point Area Senior High School (SPASH) in the Stevens Point Area Public School District, provided them with inaccurate information about National Collegiate Athletic Association (NCAA) student athlete scholarship eligibility requirements, and as a result, Ryan Scott lost a hockey scholarship to the University of Alaska. The plaintiffs brought suit against Stevens Point Area Public School District and its insurer, Savers Property and Casualty Insurance Company (the District), seeking damages for the loss of the scholarship and other expenses incurred. The amended complaint sets forth three claims for relief: negligence, breach of contract, and promissory

---

[1] *Scott v. Savers Prop. & Cas. Ins. Co.*, No. 01–2953, unpublished slip op. (Wis. Ct. App. July 18, 2002).

[2] All subsequent references to the Wisconsin Statutes are to the 2000–2001 version unless otherwise indicated.

estoppel. The District responded by filing a motion to dismiss for failure to state a claim upon which relief may be granted.

¶ 3. To determine whether the plaintiffs' amended complaint against the District should be dismissed for failure to state a claim upon which relief can be granted, we must answer three questions: First, does the negligent provision of counseling services, as alleged in the amended complaint, fall under either the ministerial duty or professional discretion exception to Wisconsin's governmental immunity statute, Wis. Stat. § 893.80(4), so that the plaintiffs state a claim against the District? Second, was an enforceable contract created between the District and the plaintiffs when, according to the amended complaint, guidance counselor Johnson agreed to assist Ryan Scott in selecting classes approved by the NCAA, so that the plaintiffs have a claim for breach of contract? Third, does the plaintiffs' amended complaint allege grounds for equitable relief based upon the doctrine of promissory estoppel?

¶ 4. We answer each question in the negative and affirm the court of appeals' decision that the amended complaint should be dismissed. We conclude that none of the allegations in the plaintiffs' amended complaint support a claim for relief under either the ministerial act or professional discretion exception to Wis. Stat. § 893.80(4). We conclude that no contract exists to support a breach of contract claim in the present case because any alleged promise by the District to provide counseling services was a promise to perform a preexisting legal obligation. We also conclude that the promissory estoppel claim fails. Permitting the plaintiffs to obtain damages from an immune public official through the back door opened by a claim of promissory estoppel

133

contravenes the government immunity policy of this State set forth in Wis. Stat. § 893.80(4) and consequently would not serve the ends of justice.

## I

¶ 5. A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint.[3] All facts pleaded and all reasonable inferences from those facts are admitted as true, but only for the purpose of testing the legal sufficiency of a claim, not for trial.[4] A complaint will be dismissed only if it appears certain that no relief can be granted under any set of facts that the plaintiffs might prove in support of their allegations.[5]

¶ 6. Whether a complaint states a claim upon which relief may be granted is a question of law that is determined by this court independent of the circuit court and court of appeals, but with the benefit of the analyses of these courts. We test the sufficiency of the plaintiffs' amended complaint by first setting forth the facts asserted in the complaint and then analyzing each of the legal theories upon which the plaintiffs rest their claims for relief.[6]

---

[3] *See* Wis. Stat. § 802.06(2)(a)b; *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985).

[4] *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 669, 292 N.W.2d 816 (1980).

[5] *Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis. 2d 56, 82, 307 N.W.2d 256 (1981).

[6] *Watts v. Watts,* 137 Wis. 2d 506, 512, 405 N.W.2d 303 (1987).

## II

¶ 7. The plaintiffs' amended complaint alleges the following facts. Ryan Scott attended Stevens Point Area Senior High School (SPASH), which is part of the Stevens Point Area Public School District. SPASH offered guidance counseling services as required by Wis. Stat. § 121.02(1)(e) and Wis. Admin. Code § PI 8.01(e) (Oct., 2001).[7] These services were explained in the school's "Educational Planner," a publication offered to

---

[7] Wisconsin Stat. § 121.02(1) reads: "Except as provided in s. 118.40(2r)(d), each school board shall: . . . (e) Provide guidance and counseling services."

Wisconsin Admin. Code § PI 8.01(e) (Oct., 2001) reads:

Each school district board shall provide a program of guidance and counseling services for all pupils, which meets all of the following requirements:

1. The school district shall maintain a school board approved plan for the provision of a program of guidance and counseling services.

2. The program shall be developmentally based and available to every pupil in every grade of the school district.

3. The program shall be:

 a. Systematically planned by licensed school counselors in collaboration with other licensed pupil services staff, teachers, parents and community health and human service professionals.

 b. Provided by licensed school counselors in collaboration with other licensed pupil services staff, teachers, parents and community health and human service professionals.

4. The program shall provide developmentally appropriate education, vocational, career, personal and social information to assist pupils in problem solving and in making decisions.

5. The program shall include pupil appraisal, post-secondary planning, referral, research and pupil follow-up activities.

students.[8] Dave Johnson was employed by the District as a guidance counselor at SPASH and met the state's licensing requirements. Johnson was Ryan Scott's assigned guidance counselor.

¶ 8. During Ryan Scott's junior year of high school, he and his parents met with Johnson. The plaintiffs explained that Ryan Scott was trying to receive a hockey scholarship to an NCAA Division I school. The plaintiffs knew that the NCAA required students to take courses in certain core subjects in order to be eligible for a student athlete scholarship. The plaintiffs told Johnson that they wanted to make sure Ryan Scott fulfilled the core requirements and needed help in selecting the appropriate courses. Johnson agreed to assist them.

¶ 9. In Ryan Scott's senior year of high school, he and his mother met with Johnson to discuss which classes Ryan Scott should take. They asked Johnson specifically whether "Broadcast Communication" was a course approved by the NCAA as fulfilling a core English requirement. This information was available to Johnson. SPASH had sent its curriculum to the NCAA Initial Eligibility Clearinghouse and received a Form 48–H indicating those courses offered by SPASH that met the NCAA approved core course requirements and those that did not. Johnson had access to 48–H forms covering several years, and each of them explicitly states that "Broadcast Communication" is not an ap-

---

[8] The relevant section of the Educational Planner reads: "[The Student Services/Counseling Office] offer[s] course advising, reference books and college catalogs, computer search programs, career counseling, scholarship and financial aid information, opportunities to talk with university and vocational-technical college representatives, and years of experience and expertise." SPASH Educational Planner at 5.

proved course. Johnson, however, erroneously advised Ryan Scott and his mother that "Broadcast Communication" was an approved course. Ryan Scott enrolled in and completed the "Broadcast Communication" course.

¶ 10. After graduating from SPASH, Ryan Scott played junior hockey in Iowa and was offered a full four-year scholarship to the University of Alaska, an NCAA Division I school. The plaintiffs accepted the scholarship offer. The scholarship was contingent upon receipt of an initial eligibility certification from the NCAA. After receipt of Ryan Scott's final transcripts from SPASH, the NCAA determined that Ryan Scott was not eligible for a Division I student athlete scholarship solely because "Broadcast Communication" was not an approved core course in English. The University of Alaska rescinded its scholarship.

¶ 11. The plaintiffs sued the District, seeking recovery in the amount of the rescinded scholarship plus the out-of-pocket expenses they incurred for Ryan Scott's college education, and the District filed a motion to dismiss.

¶ 12. The circuit court granted the District's motion to dismiss the amended complaint, concluding that the plaintiffs' case was governed by *Kierstyn v. Racine Unified School District*, 228 Wis. 2d 81, 596 N.W.2d 417 (1999). In *Kierstyn*, the court held that a school district benefits specialist who provided erroneous advice was immune from liability. The circuit court held that the immunity rationale of *Kierstyn* applied to the plaintiffs' promissory estoppel claim.

¶ 13. The court of appeals affirmed the judgment of the circuit court dismissing the plaintiffs' suit. The court of appeals held that the District was immune from suit under Wis. Stat. § 893.80(4), pursuant to *Kierstyn*. Moreover, the court of appeals concluded that

the alleged contract failed for lack of consideration and that equitable relief under the doctrine of promissory estoppel was not appropriate because the District did not make a promise that reasonably induced reliance, and because injustice would not be avoided or remedied by granting judgment to the plaintiffs.

### III

¶ 14. We begin our analysis of the amended complaint with the plaintiffs' claim for damages on the ground of negligence. The parties agree that the amended complaint properly states all the elements of a negligence claim. The dispute focuses on whether the District is immune from liability for negligence under Wis. Stat. § 893.80(4), Wisconsin's government immunity statute.

¶ 15. The statute provides political subdivisions and public officials with immunity for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions. Section 893.80(4) reads as follows:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

138

¶ 16. Decisions of this court have concluded that quasi-judicial or quasi-legislative activities are activities that involve the exercise of "discretion."[9] Further decisions of this court have recognized limitations to governmental immunity where the activities performed are (1) ministerial duties imposed by law, (2) duties to address a known danger, (3) actions involving professional discretion, and (4) actions that are malicious, willful, and intentional.[10]

¶ 17. The plaintiffs argue that the amended complaint in the present case was improperly dismissed because rendering guidance counseling and advice to students falls within the ministerial duty exception and the professional discretion exception to immunity. According to the plaintiffs, Johnson was not required to exercise any discretion or judgment in accurately conveying the unambiguous information contained in Form 48–H that "Broadcast Communication" was not an NCAA-approved course. The information Johnson disseminated was, the plaintiffs argue, capable of being easily and readily verified. Furthermore, the plaintiffs assert that Johnson, as a licensed and certified school counselor, exercised "professional" discretion and is therefore exempt from immunity.

---

[9] *Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 596 N.W.2d 417 (1999).

[10] *Lodl v. Progressive N. Ins. Co.,* 2002 WI 71, ¶ 24, 253 Wis. 2d 323, 646 N.W.2d 314; *Kierstyn,* 228 Wis. 2d at 90.

These concepts are generally applicable to both state and municipal officers and the tests for immunity are similar. *Kimps v. Hill,* 200 Wis. 2d 1, 10 n.6, 546 N.W.2d 151 (1996) (citing *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 682 n.19, 683 n.20, 292 N.W.2d 816 (1980)).

¶ 18. We conclude, as did both the circuit court and court of appeals, that the present case does not fall within either the ministerial duty exception or the professional discretion exception to immunity and that therefore the District is immune from liability under Wis. Stat. § 893.80(4).

¶ 19. The facts in the case at hand and the plaintiffs' claim are legally indistinguishable from the facts and claim set forth in our four-year-old *Kierstyn* decision, in which the ministerial duty and professional discretion exceptions were explained. In *Kierstyn,* the court ruled against the complainant, who suffered financial harm when he relied on the erroneous advice of a benefits counselor employed by a school district. Because we conclude that *Kierstyn* governs the outcome of the present case, we shall examine the facts and holding of *Kierstyn.*

¶ 20. Judith Kierstyn was an employee of the Racine Unified School District. She became ill and had to take a medical leave of absence. She received benefits both as a union employee of the school district and as a municipal employee with the Wisconsin Retirement System (WRS), and when she ceased working, Ms. Kierstyn and her husband met with a health benefit specialist employed by the school district in order to determine the disability benefits. The health benefit specialist was an employee of the school district and authorized to give employees information about their union benefits; he was not, on the other hand, an agent of WRS able to give authoritative advice on WRS benefits, though he was equipped with the resources to provide information on WRS benefits.

¶ 21. At this meeting, the health benefit specialist erroneously informed the Kierstyns that Ms. Kierstyn could not apply for WRS benefits until she had depleted

all of her available sick leave, despite the fact that Wis. Stat. § 40.63 clearly and unambiguously stated otherwise. Relying on this misinformation, the Kierstyns did not apply for disability benefits. Ms. Kierstyn died before depleting her available sick leave and therefore never applied for her disability benefits. Her death rendered her ineligible for the disability benefits.

¶ 22. Mr. Kierstyn sued the benefit specialist and the school district for damages for negligence, and the school district defended on the ground that the health benefit specialist exercised a discretionary function so that the District was immune under Wis. Stat. § 893.80(4).

¶ 23. Mr. Kierstyn contended that the benefits counselor's actions fell within the ministerial duty exception to liability, because the correct advice that the specialist should have provided was clearly and unambiguously available to the specialist and did not require the specialist to exercise any discretion to provide it. This court rejected his claim.

¶ 24. The *Kierstyn* court explained that a duty is ministerial in nature when its performance is demanded by a specific legal obligation that leaves no room for judgment or discretion. The court reasoned that the health benefit specialist in *Kierstyn* did not perform a ministerial duty. He was not legally obligated to provide WRS benefit information; his conduct was not due to any duty that was "absolute, certain and imperative" or any law that "impose[d], prescribe[d] and define[d] the time, mode and occasion for [the conduct's] performance."[11]

¶ 25. Moreover, the court rejected Mr. Kierstyn's chief argument that once the benefit specialist took the

[11] *Kierstyn,* 228 Wis. 2d at 91.

discretionary action of providing WRS information, he had a ministerial duty to provide the information that was unambiguously contained in the statute.[12] Mr. Kierstyn acknowledged that when an officer applies a statute to a given set of facts, the interpretation is quasi-judicial and has the hallmarks of discretion. Yet Mr. Kierstyn argued that the unambiguous statute created a ministerial duty once the officer acted. Thus Mr. Kierstyn's argument that a ministerial duty was involved focused on the clear statutory statement of the information the benefit specialist erroneously furnished. The *Kierstyn* court concluded that the statute's clarity regarding the information to be provided does not render the duty ministerial.

¶ 26. Unlike the health benefit specialist in *Kierstyn,* Johnson provided guidance and counseling services to students that SPASH was required to provide.[13] The question remains, however, whether Johnson was performing ministerial or discretionary duties when he gave advice about NCAA-approved courses to Ryan Scott.

¶ 27. A duty is regarded as ministerial when it has been "positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion."[14] Recently, in

---

[12] *Id.* at 92.

[13] *See* Wis. Stat. § 121.02(1)(e); Wis. Admin. Code § PI 8.01(2)(e) (Oct., 2001).

[14] *Lodl,* 253 Wis. 2d 323, ¶ 26 (quoting *Meyer v. Carman,* 271 Wis. 329, 332, 73 N.W.2d 514 (1955) (quoting *First Nat'l Bank v. Filer,* 145 So. 204 (Fla. 1933))).

*Lodl v. Progressive Northern Insurance Co.,* 2002 WI 71, 253 Wis. 2d 323, 646 N.W.2d 314, this court repeated the narrow definition of ministerial duties first set out in *Lister v. Board of Regents,* 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). The court wrote:

> A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes, and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.[15]

█

¶ 28. As a result of the *Lister/Lodl* definition of "ministerial," many governmental actions, even those done under a legal obligation, qualify as discretionary because they implicate some discretion.[16] The court of appeals concluded, in accordance with this definition, that the provision of guidance services is inherently discretionary because the statute and regulation do not impose, prescribe, and define the time, mode, and occasion for its performance. Neither the statute nor the regulation creates a duty that is "absolute, certain

---

[15] *Lodl,* 253 Wis. 2d 323, ¶ 25 (quoting *Lister v. Bd. of Regents,* 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).

[16] Justice Prosser, dissenting in *Willow Creek Ranch, L.L.C. v. Town of Shelby,* 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, noted that as early as 1867 the Court observed that "[i]t is sometimes difficult to draw the exact line of distinction between ministerial and discretionary or judicial authority. The same officer may act sometimes in one capacity, and sometimes in the other." *Willow Creek Ranch, L.L.C.,* 235 Wis. 2d 409, ¶ 129 (quoting *Druecker v. Salomon,* 21 Wis. 621, 637 (1867)). Also see the McQuillin text on Municipal Corporations cited by Justice Prosser in *Willow Creek,* 235 Wis. 2d 409, ¶ 136, stating that "the difference between 'discretionary' and 'ministerial' is artificial."

and imperative" with respect to counseling or providing information about NCAA requirements. The court of appeals wrote as follows:

> The counselor's general obligation to provide counseling services did not dictate precisely what advice or information should be given to each student. Rather, the counselor was required to apply the requirements of various institutions to each student's situation. This interpretive process was inherently discretionary in nature.[17]

¶ 29. We agree with the court of appeals, given our definition of "ministerial." Moreover, like the clear and unambiguous benefits statute in *Kierstyn,* the existence of Form 48–H clearly and unambiguously detailing approved and unapproved NCAA courses does not transform Johnson's counseling obligations into a ministerial act. His failure to provide correct advice in the face of clear and unambiguous information goes to his negligence, not the nature of his duty. In the end, the plaintiffs' argument is not that the NCAA Form 48–H imposes a ministerial duty on Johnson, only that its clarity renders Johnson's conduct that much more negligent. The analysis of immunity under Wis. Stat. § 893.80(4), however, assumes negligence.[18] We conclude that Johnson's actions, like those of the health benefit specialist in *Kierstyn,* do not fall within the definition of ministerial conduct.

---

[17] *Scott v. Savers Prop. & Cas. Co.,* No. 01–2953, unpublished slip op., ¶ 10 (Wis. Ct. App. July 18, 2002).

[18] *Kierstyn,* 228 Wis. 2d at 94; *see also Lodl,* 253 Wis. 2d 323, ¶ 17 ("The immunity defense assumes negligence, focusing instead on whether the municipal action or inaction upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies.").

¶ 30. The plaintiffs' second argument is that any discretion exercised by Johnson was professional in nature and therefore falls within the third exception to governmental immunity. This argument was also raised in *Kierstyn* and rejected by this court. As the court in *Kierstyn* explained, the professional discretion exception to governmental immunity has been limited to the medical setting.[19]

■

¶ 31. The professional discretion exception to governmental immunity originated in *Scarpaci v. Milwaukee County,* 96 Wis.2d 663, 292 N.W.2d 816 (1980), in which the court held a county medical examiner liable for negligence committed in the course of performing an autopsy. This court in *Scarpaci* concluded that the decisions made during the autopsy constituted "medical" discretion, not "governmental" discretion, and therefore the medical examiner was not protected from liability.[20] The exception has been applied in only two other cases, both involving public officials performing acts in the medical context,[21] and in *Stann v. Waukesha County,* 161 Wis. 2d 808, 818, 468 N.W.2d 775 (Ct. App. 1991), the court of appeals limited the exception to the medical context. In *Kierstyn* and in *Kimps v. Hill,* the court refused to revisit the *Stann* rule.[22]

---

[19] *Kierstyn,* 228 Wis. 2d at 97–98.

[20] *Scarpaci,* 96 Wis. 2d at 686.

[21] *See Protic v. Castle Co.,* 132 Wis. 2d 364, 369–70, 392 N.W.2d 119 (Ct. App. 1986); *Gordon v. Milwaukee County,* 125 Wis. 2d 62, 67–68, 370 N.W.2d 803 (Ct. App. 1985).

[22] *See Kierstyn,* 228 Wis. 2d at 98; *Kimps v. Hill,* 200 Wis. 2d 1, 19–20, 546 N.W.2d 151 (1996).

¶ 32. The court concluded in *Kierstyn* that "even if we were to read *Scarpaci* as erasing immunity for acts of professional discretion, this expansion would be of no avail to [Mr.] Kierstyn."[23] Including a health benefits specialist within the professional discretion exception would mean that many persons would fall within the professional discretion exception and that the exception "would swallow the rule."[24] Similarly, we conclude that the professional discretion exception to Wis. Stat. § 893.80(4) does not apply to a guidance counselor.

¶ 33. In addition to their arguments that Johnson's actions fall within one of the exceptions to immunity, the plaintiffs urge this court to reexamine its cases and the balance this court has struck between the need of municipal public officers to perform their functions freely and the right of an aggrieved party to seek redress for injuries. The plaintiffs urge the court to return to the holding in *Holytz v. City of Milwaukee* that immunity is the exception, not the rule,[25] to abandon the rule equating the concepts of "quasi-judicial" and "quasi-legislative" in § 893.80(4) with discretionary duties, and to reexamine the multitude of exceptions and interpretations the court has encrusted on Wis. Stat. § 893.80(4).

¶ 34. The plaintiffs argue that Wis. Stat. § 893.80(4), codifying this court's decision in *Holytz,* originally intended to provide *municipal* government immunity only for a narrow slice of conduct involving "legislative or judicial or quasi-legislative or quasi-

[23] *Kierstyn,* 228 Wis. 2d at 99.

[24] *Id.* at 98.

[25] *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 40, 115 N.W.2d 618 (1962).

judicial functions." According to the plaintiffs, this court mistakenly broadened the grant of municipal immunity in *Lifer v. Raymond,* 80 Wis. 2d 503, 259 N.W.2d 537 (1977), when it affixed to the doctrine of municipal officer immunity the ministerial/discretionary distinction applicable to *state* government immunity. The result of this erroneous mixing of doctrines, asserts the plaintiffs, is that students like Ryan Scott remain powerless and remediless in the face of clearly negligent actions committed by schools and other municipal actors.

¶ 35. This court has had many opportunities to apply Wis. Stat. § 893.80(4), and we have struggled to define the proper scope of governmental immunity, considering the underlying policy goals.[26] The doctrine of governmental immunity represents "a balance between the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress."[27] The doctrine reflects concern for "pro-

[26] The court has set forth the following policy considerations supporting governmental immunity:

> (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) The deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) The drain on valuable time caused by such actions; (4) The unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5)The feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.

*Kierstyn,* 228 Wis. 2d at 89–90 (quoting *Lister v. Bd. of Regents,* 72 Wis. 2d 282, 299–300, 240 N.W.2d 610 (1976)).

[27] *Id.* at 89 (quoting *Lister,* 72 Wis. 2d at 300).

tection of the public purse against legal action and . . . the restraint of public officials through political rather than judicial means."[28]

¶ 36. Governmental immunity was developed "to protect public officers from being unduly hampered or intimidated in the discretion of their functions by threat of lawsuit or personal liability."[29] Guidance counselors are important figures in our educational system. They are regularly required to make discretionary decisions and judgment calls in performing their functions, and the future progress and success of students rests on the ability of the guidance counselors to make those decisions. Immunity allows guidance counselors to perform their duties free from the hindrance of threats of litigation or liability.

¶ 37. The plaintiffs correctly point out that Ryan Scott has suffered greatly, and he has no avenue for redress. The outcome of this case is harsh, and the harshness of our holding is especially palpable because the negligence is so clear. Yet the doctrine of governmental immunity plays a significant role in our legal system. Imposing liability in the present case would therefore not serve the policy underlying the doctrine of immunity.

¶ 38. For the reasons set forth, we conclude that the District is immune from liability for negligence under Wis. Stat. § 893.80(4).

IV

¶ 39. We turn next to the plaintiffs' contract-based claims. The plaintiffs allege contract claims to

---

[28] *Id.* at 89–90 (quoting *Lister,* 72 Wis. 2d at 299).

[29] *Scarpaci,* 96 Wis. 2d at 682 (citing *Lister,* 72 Wis. 2d at 299).

avoid the application of Wis. Stat. § 893.80(4), the government immunity statute.

¶ 40. The plaintiffs allege two contract claims as grounds for relief. The first claim is that a contract to provide counseling services exists between the District and the plaintiffs and that the District breached the contract when it gave incorrect information to Ryan Scott about the "Broadcast Communication" course. The second claim is that, if no contract exists, the plaintiffs are entitled to equitable relief under the doctrine of promissory estoppel because the District should have expected its promise to provide counseling services to induce the plaintiffs to act in reliance on that promise, which they did to their detriment.

¶ 41. We agree with the court of appeals that neither contract-based theory states a claim upon which relief may be granted.

A

¶ 42. The plaintiffs argue that a contract was formed when they accepted the District's offer to provide them with guidance counseling services, including a specific offer to counsel Ryan Scott about NCAA-approved core courses necessary for Division I student athlete scholarship eligibility. The plaintiffs view the contract with the District as a unilateral contract. According to the plaintiffs, the District made the offer to provide counseling and the plaintiffs accepted the offer by their performance, that is, by their utilizing the counseling services. This contract was then breached, argue the plaintiffs, when Johnson counseled Ryan Scott to take the unapproved "Broadcast Communication" course.

¶ 43. The District responds that no enforceable contract was created or breached in the present case.

According to the District, the alleged contract fails for insufficiency of consideration—the promise to provide counseling services is not sufficient consideration because it is a promise to perform an act that the District is already statutorily and legally obligated to perform. The court of appeals agreed with the District, concluding that because the District was legally obligated to provide guidance counseling services under Wis. Stat. § 121.02(e) (Oct., 2001), there was no bargained-for exchange of promises between the parties.[30]

¶ 44. We agree with the District and the court of appeals that no contract existed between the District and the plaintiffs in the present case. The district is required by statute and administrative regulation to provide guidance counseling services. Thus the District and its agent, Johnson, had a legal duty to the plaintiffs to do what they allegedly promised to do. Under Wis. Stat. § 121.02(1)(e) and Wis. Admin. Code § PI 8.01(e), the District and Johnson could not have refrained from providing counseling services. Consequently, neither the District nor Johnson could have participated in any bargained-for exchange for counseling services with the plaintiffs.[31]

[30] *Scott v. Savers Prop. & Cas. Ins. Co.*, No. 01–2953, unpublished slip op., ¶ 5 (Wis. Ct. App. July 18, 2002).

[31] *Holcomb v. United States*, 622 F.2d 937, 941 (7th Cir. 1980) (holding that taxpayer's promise to make monthly tax payments in response to government's promise to apply bankruptcy proceeds in particular manner was not sufficient consideration to create contract because taxpayer was already legally obligated to pay taxes).

The plaintiffs contend that it is inconsistent to conclude that no contract was formed in this case because the promise

¶ 45. The general rule is that the performance of a legal duty, or the promise to perform a legal duty, is not sufficient consideration to create a contract.[32] Here,

made to the plaintiffs to provide counseling was a preexisting legal obligation and that the duty to provide counseling is discretionary, not ministerial. The plaintiffs' argument confuses two concepts. The fact that a public official has a legal duty to perform a specific act does not mean that performance of that act is made without judgment or discretion.

[32] Restatement (Second) of Contracts §§ 71, 73 (1981); Restatement of Contracts § 76(a) {1932).

The preexisting legal duty rule is the subject of debate and, according to some commentators, is in the process of decay and disintegration. *See* 2 *Corbin on Contracts,* § 7.5 at 351 (1996); John D. Calamari & Joseph M. Perillo, *The Law of Contracts,* § 4–9 at 204 (3d ed. 1987); E. Allan Farnsworth, *Farnsworth on Contracts,* §§ 4.21, 4.22 at 501–07 (1998).

The erosion of the rule, however, appears to be taking place in the commercial contract context where the preexisting duty rule historically stood in the way of two parties seeking to modify an unperformed duty that already existed under a valid contract. 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, *Corbin on Contracts,* § 7.5 at 351 (1996); E. Allan Farnsworth, *Farnsworth on Contracts,* §§ 4.21, 4.22 at 501–07 (1998).

A preexisting contractual duty is distinguishable from a duty imposed by statute on public officials and public employees because of the public policy considerations involved. A public official's contracting with a member of the public to perform that which he or she is already legally required to do suggests either that the official has threatened to withhold performance of the duty already owed or is obtaining an inappropriate private benefit. Thus, while the plaintiffs' claim fails under established principles of contract law, it may also be true, as some commentators suggest, that it is unwise as a matter of public policy to recognize the creation of a contractual relationship every time a public employee is asked to perform a service required by law. *See* Restatement (Second) of Contracts § 73

Johnson's and the District's performance was induced not by the plaintiffs but by the laws of the state. The plaintiffs had a right to have Johnson perform his job, but no contract was created between the plaintiffs and the District or Johnson. The Williston contract text explains the rule as follows:

> If a promisee is already bound by official duty to render a service, it is no detriment to him and no benefit to the promisor beyond that what the law requires the promise to suffer or to give, for him to do or agree to do the service on request. Though the previous legal duty does not necessarily run to the promisor under the later agreement, it does run to the public of which the promisor is one member. As such, he has a right, though it may not be one enforceable at law, to the performance in question, and therefore, no contract can be based upon such consideration.[33]

cmt. b (1981); Richard A. Lord, *Williston on Contracts,* § 7.41 at 657 (1992). *See also Borg-Warner Acceptance Corp. v. Dep't of State,* 444 N.W.2d 786, 789 n.4 (Mich. 1989).

The plaintiffs ask this court to adopt the rule that a promise made to a person entitled to the performance of an existing legal obligation may be enforced against the promisor. The plaintiffs cite specifically to the rule announced in *American Jurisprudence (Second) Contracts* § 164 (2002), addressing past consideration. Because the rule of past consideration addresses situations in which parties seek to modify an unperformed duty that already existed under a valid contract and does not apply to situations in which a public official's or public employee's legal duty arises under statute—that is, without the formation of a contract—it is inapposite here.

[33] 3 Richard A. Lord, *Williston on Contracts,* § 7:41 at 653–57 (4th ed. 1992).

The plaintiffs fail to cite any case in support of their argument that a public school district is bound by contract to perform governmental services required by law. The plaintiffs'

¶ 46. The plaintiffs argue that focusing only on the provision of counseling services generally ignores the additional promise made by Johnson to specifically aid the plaintiffs with the selection of NCAA-approved courses. The plaintiffs are attempting to assert that Johnson offered, promised, or agreed to perform services in addition to those required by law. We conclude that Johnson made no such agreement.

¶ 47. The District is required to develop a counseling program that provides education information to assist pupils in problem solving and in making decisions.[34] The program "shall" include "post-secondary planning."[35] Johnson's promise to advise Ryan Scott in selecting NCAA-approved courses thus falls squarely within the District's obligation to assist with post-secondary planning and is part and parcel of the legal duty already owed to the plaintiffs.[36] In this case the

reliance on *Sain v. Cedar Rapids Community School District*, 626 N.W.2d 115 (Iowa 2001), to support any of its claims is misplaced. Although the facts in *Sain* are remarkably similar to those in the present case, the Iowa Supreme Court's reasoning in *Sain* does not support either the plaintiffs' contract or negligence claim. The Iowa supreme court did not rely on contract doctrines to hold the school district liable. The Iowa supreme court permitted a tort claim of negligent misrepresentation against the school district to proceed in *Sain* under Iowa law, but specifically observed that "some states have enacted statutes giving schools and teachers immunity from any liability." *Sain*, 626 N.W.2d at 127. As we have previously held, Wis. Stat. § 893.80(4) is just such a statute.

[34] Wis. Admin. Code § PI 8.01(e)(4) (Oct., 2001).

[35] Wis. Admin. Code § PI 8.01(e)(5) (Oct., 2001).

[36] The plaintiffs also urge this court to follow other jurisdictions that have recognized that a contractual relationship exists between a school and a student under certain circum-

services provided to the plaintiffs were not in addition to or materially different from the District's performance of its legal obligation to provide guidance counseling.

¶ 48. We conclude that the plaintiffs' breach of contract claim fails. The District and Johnson had a legal duty to provide the counseling services requested by the plaintiffs. The plaintiffs did not convert this legal duty into a contractual duty by requesting or using Johnson's service.

## B

¶ 49. The plaintiffs next argue that if their breach of contract claim fails, then the doctrine of promissory estoppel requires judicial enforcement of Johnson's promise. The plaintiffs argue that Johnson and Ryan Scott had a special relationship and Ryan Scott relied on Johnson's statement that "Broadcast Communication" was an NCAA-approved course to his detriment.

¶ 50. The District responds that promissory estoppel is not appropriate because the plaintiffs relied on Johnson's representation that the course was NCAA-approved, not on Johnson's promise to provide guidance counseling and aid with course selection.

¶ 51. In order to state a claim on which equitable relief under the doctrine of promissory estoppel may be

stances. They cite *Hendricks v. Clemson University,* 529 S.E.2d 293 (S.C. Ct. App. 2000), *Ross v. Creighton University,* 957 F.2d 410 (7th Cir. 1992), and *Wickstrom v. North Idaho College,* 725 P.2d 155 (Idaho 1986). All of the cases are distinguishable, however. They all involve post-secondary schools, none of which was statutorily required to offer the services that formed the basis of the contract.

granted, the plaintiffs' complaint must be read to allege the three elements of promissory estoppel. The elements are:

> 1. The promise is one which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee;

> 2. The promise induced such action or forbearance; and

> 3. Injustice can be avoided only by enforcement of the promise.[37]

The first two elements are typically questions of fact, while the third element requires a court to make a "policy decision."[38]

¶ 52. We conclude that considerations of policy undermine any claim for relief under the doctrine of promissory estoppel in the present case. Undoubtedly, Ryan Scott has suffered a great injustice. He lost a full scholarship to the University of Alaska and the opportunity to play on an NCAA Division I hockey team based upon the negligent acts of Johnson and the District. However, when making a policy decision under the third element of the promissory estoppel test—that is, determining whether an injustice can be avoided by enforcing the promise—a court "must remember all of its powers, derived from equity, law merchant, and other sources, as well as the common law. Its decree should be molded accordingly."[39]

---

[37] *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965).

[38] *Id.* at 698.

[39] *Id.* at 702.

¶ 53. Molding a decision upon consideration of all sources of law under the third element of promissory estoppel also includes consideration of the statutory restriction on governmental liability. Governmental immunity under Wis. Stat. § 893.80(4) applies only to claims based in tort, not to claims in contract.[40] Promissory estoppel, however, rests on a theory separate from contract;[41] a claim for promissory estoppel only arises when there is no contract. "One branch of promissory estoppel's family tree lies in tort"[42] and "[o]bligations and remedies based on reliance are not peculiar to the law of contracts."[43] A single set of facts may give rise to actions both in contract and in tort, thus making it difficult to always draw a clear distinction between the two actions.[44]

---

[40] *See Willow Creek Ranch, L.L.C. v. Town of Shelby,* 2000 WI 56, ¶¶ 33, 35, 235 Wis. 2d 409, 611 N.W.2d 693 (suits must be based in tort to garner the protection of immunity consistent with the statute); *Energy Complexes, Inc. v. Eau Claire County,* 152 Wis. 2d 453, 464–65, 449 N.W.2d 35 (1989) (statute does not grant immunity from breach of contract claims).

[41] *See Ferraro v. Koelsch,* 124 Wis. 2d 154, 368 N.W.2d 666 (1985); *Forrer v. Sears, Roebuck & Co.,* 36 Wis. 2d 388, 153 N.W.2d 587 (1967).

[42] 3 *Corbin on Contracts* § 8.11 at 55 (1996) ("Arguably, promissory estoppel can be asserted as an independent tort theory of detrimental reliance."); E. Alan Farnsworth, *The Past of Promise: An Historical Introduction to Contract,* 69 Colum. L. Rev. 576, 594 (1969).

[43] Restatement (Second) of Contracts § 90 cmt. a.

[44] *See, e.g., Brooks v. Hayes,* 133 Wis. 2d 228, 235, 246, 395 N.W.2d 167 (1986) (failure to exercise common law duty to perform contracts with care and skill is a tort as well as a breach of contract); *Matusik v. Dorn,* 756 P.2d 346, 347–48 (Ariz. App.

¶ 54. In the present case, the plaintiffs' promissory estoppel claim is based on the same allegations as the plaintiffs' negligence claim. We have just held that the grant of government immunity under Wis. Stat. § 893.80(4) extends to the plaintiffs' negligence claims against the District and Johnson.

¶ 55. Permitting the plaintiffs to obtain damages from an immune public official through the back door opened by a claim of promissory estoppel contravenes the government immunity policy of this State set forth in Wis. Stat. § 893.80(4) and consequently would not serve the ends of justice. The circuit court correctly concluded that "the immunity rational [sic] of *Kierstyn* nevertheless applies [to the plaintiffs'] promissory estoppel premise just as it does to [the plaintiffs'] negligence claim. The facts giving rise to the claim are the

---

1988) (defective construction can give rise to claims for breach of implied warranty and common law duty of care).

In *Bicknese v. Sutula,* 2003 WI 31, 260 Wis. 2d 713, 660 N.W.2d 289, this court apparently treated a claim of promissory estoppel as a tort-based claim to which Wis. Stat. § 893.80(4) applies. *See Bicknese,* 260 Wis. 2d 713, ¶ 13 n.2 (declining to address whether promissory estoppel should be treated the same as a contract with respect to public officer immunity "[s]ince neither party petitioned this court for a determination" of that issue). In the present case, unlike in *Bicknese,* the plaintiffs treat promissory estoppel as a contract-based claim.

The plaintiff in *Bicknese* prevailed despite the fact that the court treated her promissory estoppel claim as a tort and applied § 893.80(4) because the *Bicknese* court concluded that the ministerial exception to governmental immunity was applicable. This exception, as was discussed previously, does not apply in the present case.

same in either cause of action. Promissory estoppel could've been pled in *Kierstyn*."[45]

## V

¶ 56. For the foregoing reasons, we affirm the decision of the court of appeals affirming the circuit court's judgment dismissing the plaintiffs' amended complaint for failure to state a claim upon which relief can be granted.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 57. ANN WALSH BRADLEY, J., did not participate.

¶ 58. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring).* As I recognized in writing for the majority, this court has had many opportunities to apply Wis. Stat. § 893.80(4), and we have struggled to define the proper scope of governmental immunity.[1] One need only review a handful of this court's recent decisions on the limits of governmental immunity to appreciate the jurisprudential chaos surrounding the phrase "legislative, quasi-legislative, judicial or quasi-judicial functions" in § 893.80(4).[2]

¶ 59. If this court is ready to revisit the limits of Wis. Stat. § 893.80(4), as Justice Prosser's dissent and Justice Bablitch's concurrence suggest, then it should

---

[45] *Scott v. ABC Ins. Co.,* Case No. 00–CV-286, Decision and Order on Motion to Dismiss at 2 (Aug. 27, 2001) *(see* Appendix of Plaintiffs-Appellants-Petitioners at 8).

[1] Majority op., ¶ 34.

[2] *See, e.g., Bicknese v. Sutula,* 2003 WI 31, 260 Wis. 2d 713, 660 N.W.2d 289; *Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 596 N.W.2d 417 (1999); *Lodl v. Progressive N. Ins. Co.,* 2002 WI 71, 253 Wis. 2d 323, 646 N.W.2d 314.

set this case for re-briefing and re-argument in the fall and invite amicus curiae participation from affected actors, such as the State of Wisconsin, the League of Wisconsin Municipalities, the Wisconsin Counties Association, the Wisconsin Insurance Alliance, and others. The impact of construing governmental immunity anew will have a far-reaching impact, and this court should only undertake such a task with the benefit of full information.

¶ 60. I am authorized to state that Justices WILLIAM A. BABLITCH and N. PATRICK CROOKS join this opinion.

¶ 61. WILLIAM A. BABLITCH, J. *(concurring).* Although my sentiments are with the dissent, I concur only because I feel compelled by stare decisis to do so.

¶ 62. Although the majority's result is consistent with past cases, it is also an unjust result. This court should revisit these past cases for the reasons so well stated in the dissent of Justice Prosser. A doctrine of governmental immunity that has caused such injustice and inequity, in this case and others, cannot, and I predict, will not, stand much longer. *See, e.g., Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 596 N.W.2d 417 (1999); *Willow Creek Ranch v. Town of Shelby,* 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693. Unfortunately, because this court will not now revisit the past, Scott suffers.

¶ 63. Here, Scott did nothing wrong. In fact, he did everything right. Scott sought out the appropriate individual to assist him in choosing courses to fulfill the requirements for his NCAA scholarship. Scott relied on the advice of his high school guidance counselor, the school official who was privy to the information Scott

requested; regrettably, it was to his detriment. The law should not allow such an injustice. Although the majority denies Scott any relief, I believe he should have a legal remedy. Accordingly, I respectfully concur.

¶ 64. I am authorized to state that Justice N. PATRICK CROOKS joins this concurrence.

¶ 65. DIANE S. SYKES, J. *(concurring)*. I write separately to state my disagreement with the majority's characterization of promissory estoppel. The majority opinion appears to suggest that in some circumstances, promissory estoppel may be a tort remedy. Majority op., ¶ 53. This is incorrect.

¶ 66. Promissory estoppel is an equitable contract remedy that enforces a promise, in the absence of proof of the elements of a contract, where there has been substantial reliance on the promise, but only to the extent that justice requires. *Hoffman v. Red Owl Stores, Inc.,* 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965). In recognizing the promissory estoppel cause of action nearly 40 years ago in *Hoffman,* this court was defining a new contract remedy, not creating a new tort. *Bicknese v. Sutula,* 2003 WI 31, ¶ 62, 260 Wis. 2d 713, 660 N.W.2d 289 (Sykes, J., dissenting).[1]

¶ 67. It is certainly true, as the majority states, that "a claim for promissory estoppel only arises when there is no contract," but the majority subtly overstates

---

[1] *See also Mackenzie v. Miller Brewing Co.,* 2001 WI 23, ¶ 25, 241 Wis. 2d 700, 623 N.W.2d 739 ("A cause of action for promissory estoppel in the employment context, like a contract cause of action based on an employee handbook, is in accordance with Wisconsin contract law."); *Ahnapee & W. Ry. Co. v. Challoner,* 34 Wis. 2d 134, 145, 148 N.W.2d 646 (1967)("[T]he basis of promissory estoppel is akin to the contractual basis for reformation.").

the matter when it also asserts that promissory estoppel "rests on a theory separate from contract." Majority op., ¶ 53. A promissory estoppel claim is not the equivalent of a breach of contract claim, in its elements or its measure of damages. *Hoffman,* 26 Wis. 2d at 699–701. But that hardly means that promissory estoppel falls outside the law of contracts and can be considered a tort cause of action.

¶ 68. On this point, the majority cites *Ferraro v. Koelsch,* 124 Wis. 2d 154, 368 N.W.2d 666 (1985), and *Forrer v. Sears, Roebuck & Co.,* 36 Wis. 2d 388, 153 N.W.2d 587 (1967). Majority op., ¶ 53 n.41. Both of these were contract cases, however, and neither supports the notion that promissory estoppel might be a tort. In *Ferraro,* this court found an express contract between the parties based upon an employee handbook. *Ferraro,* 124 Wis. 2d at 157–58. *Ferraro* simply describes the distinctions between promissory estoppel and breach of contract theories, and notes that in *Forrer* the plaintiff pleaded promissory estoppel. *Ferraro,* 124 Wis. 2d at 167–68.

¶ 69. That promissory estoppel is different from breach of contract does not operate to remove promissory estoppel from the realm of contract law into the realm of tort law. A plaintiff may proceed in tort under the separate and distinct theories of strict products liability and negligence, but these are both still tort claims, despite their distinctions. Similarly, a plaintiff may proceed in contract under the separate and distinct theories of breach of contract and promissory estoppel. Both are contract claims. If proof of the contract fails, the promise may still be enforced (although not to the extent of full breach of contract damages) if the elements of promissory estoppel are proven.

161

¶ 70. The majority also asserts that " '[o]ne branch of promissory estoppel's family tree lies in tort' " and that " '[a]rguably, promissory estoppel can be asserted as an independent tort theory of detrimental reliance.' " Majority op., ¶ 53 n.42. The source of these statements is the treatise *Corbin on Contracts*. *Id.* There is no support in Wisconsin law for *Corbin's* colorful genealogical assertion or an "arguable" independent promissory estoppel tort.

¶ 71. Tort law does contain remedies that, like promissory estoppel, protect reliance interests.[2] Tort and contract remedies, however, have distinct purposes, elements, and types of recoverable damages. *See Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶¶ 27–28, 241 Wis. 2d 700, 723–25, 623 N.W.2d 739; *Digicorp v. Ameritech*, 2003 WI 54, ¶ 75, 262 Wis. 2d 32, 662 N.W.2d 652 (Sykes, J., concurring in part, dissenting in part)(citing *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 247, 593 N.W.2d 445 (1999)). "Tort law 'rests on obligations imposed by law.' . . . In contrast, contract law 'is based on obligations imposed by bargain,'. . . Essentially, contract law is based upon the principles of free will and consent, whereas tort law is based upon the principles of risk-sharing and social duties." *Mackenzie*, 241 Wis. 2d 700, ¶¶ 27–28 (internal citations omitted). We should respect and enforce these distinctions, not blur them.[3]

---

[2] See Wis JI—Civil 2400–03 for the elements of misrepresentation.

[3] I suppose we could say that one branch of the family tree of strict products liability lies in contract law (i.e., breach of implied warranty), but that would not transform a strict products liability claim, derived from section 402A of the Restatement (Second) of Torts, into a contract action. The adoption of section 402A stemmed in part from dissatisfaction

¶ 72. The majority asserts that "[a] single set of facts may give rise to actions both in contract and in tort, thus making it difficult to always draw a clear distinction between the two actions." Majority op., ¶ 53. That a single set of facts may in certain circumstances support both a contract claim and a tort claim does not mean that a single cause of action, promissory estoppel, is both a tort and a contract remedy.

¶ 73. Here, the plaintiffs brought three claims for relief, one in tort (negligence) and two in contract (breach of contract and promissory estoppel). The majority states that "[i]n the present case . . . the plaintiffs treat promissory estoppel as a contract-based claim." Majority op., ¶ 53 n.44. I object to any suggestion that promissory estoppel can be either a tort or a contract remedy depending upon how any particular plaintiff might treat it. *Bicknese,* 2003 WI 31, ¶ 74 (Sykes, J., dissenting).

¶ 74. Although I disagree with the majority's characterization of promissory estoppel,[4] I agree that the plaintiffs have failed to state a promissory estoppel claim. There was no promise, either by the district or Johnson, upon which to base a promissory estoppel

---

with privity of contract requirements in breach of implied warranty actions, *Dippel v. Sciano,* 37 Wis. 2d 443, 460, 155 N.W.2d 55 (1967), but that does not suggest that strict products liability is a contract remedy. That both tort and contract law recognize reliance-based causes of action does not suggest that a promissory estoppel claim under *Hoffman* is a tort remedy.

[4] The majority correctly notes that public officer immunity does not apply to contract claims. Majority op., ¶ 53 n.40 (citing *Willow Creek Ranch, L.L.C. v. Town of Shelby,* 2000 WI 56, ¶¶ 33, 35, 235 Wis. 2d 409, 611 N.W.2d 693, and *Energy Complexes, Inc. v. Eau Claire County,* 152 Wis. 2d 453, 464–65, 449 N.W.2d 35 (1989)).

claim. This is an action for negligent performance of counseling services by a public high school guidance counselor, and, as such, is barred by public officer immunity under Wis. Stat. § 893.80(4). The contract and promissory estoppel claims are factually insufficient to survive the motion to dismiss.

¶ 75. DAVID T. PROSSER, J. *(dissenting)*. Four decades have passed since this court issued its landmark decision in *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962). Many have now forgotten the zeal with which a unanimous court attacked and belittled the doctrine of governmental immunity, quoting judicial and legal writers to the effect that governmental immunity was "ancient and fallacious," "archaic," "mistaken and unjust," "unsupported by any valid reason," "unjust, inequitable, and patently unfair," and an "absurdity." *Id.* at 33–35.

¶ 76. In a bold stroke, the court disavowed its past decisions and abrogated the principle of governmental immunity. It declared that "so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." *Id.* at 39.

¶ 77. The court stopped short of imposing "liability on a government body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions." *Id.* at 40 (citing *Hargrove v. Cocoa Beach,* 96 So. 2d 130, 133 (Fla. 1957)). It recognized that government should not be liable for all harms to which it is connected, including honest errors in the exercise of discretion.

¶ 78. The Wisconsin legislature did not back away from reform. It promptly enacted a progressive tort claims act which followed the suggestions in the *Holytz* opinion. *See* ch. 198, Laws of 1963. The legislature

specifically adopted the court's articulated exception to tort liability, which is now set out in Wis. Stat. § 893.80(4). This statute provides that "No suit may be brought against any . . . [political] corporation, [governmental] subdivision or agency [thereof] . . . or volunteer fire company or against its officers, officials, agents or employees *for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.*" (Emphasis added.)

¶ 79. In logic, a government agency seeking to rely on this statute as a defense against the negligence of its employee should be required to establish that the employee's negligence occurred in the exercise of some legislative, quasi-legislative, judicial, or quasi-judicial function. Yet, this is not the focus of our current jurisprudence. Instead, when the government claims immunity for negligence from an alleged "discretionary" act, an injured party is forced to try to shoehorn the negligent employee's conduct into one of the four narrow exceptions to governmental immunity, such as "ministerial duty," that have been grafted onto § 893.80(4). *Willow Creek Ranch v. Town of Shelby,* 2000 WI 56, ¶ 26, 235 Wis. 2d 409, 611 N.W.2d 693; *Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 90–97, 596 N.W.2d 417 (1999). In effect, this methodology has made the rule become immunity—the exception, liability.

¶ 80. The legislature is not responsible for the reenactment of governmental immunity. This court is responsible for several decades of backsliding that has produced today's opinion.

¶ 81. The majority opinion faithfully describes the salient facts of this case. Majority op., ¶¶ 8–9. The Stevens Point Area Senior High School submitted its curriculum to the NCAA Initial-Eligibility Clearing-

165

house and received back four reports listing, individually, both the approved and disapproved courses. These reports were dated April 4, 1996, January 30, 1997, July 31, 1997, and April 21, 1998. All four reports list BROADCAST COMMUNICATION as the first course under the heading NOT ACCEPTABLE.

¶ 82. In determining today that a school counselor is immune from liability for advising a student that BROADCAST COMMUNICATION is an acceptable NCAA-approved course when the counselor had access to a two-page, clearly organized NCAA document listing BROADCAST COMMUNICATION as NOT ACCEPTABLE, this court has come virtually full circle on governmental immunity. The result is profoundly wrong and unjust. It is also contrary to legislative intent. For the reasons indicated, I respectfully dissent.